# WOLLENSAK *v.* SARGENT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CONNECTICUT.

No. 150. Argued December 7, 1893. — Decided January 8, 1894.

Reissued letters patent No. 9307, granted July 20, 1880, to John F. Wollensak for new and useful improvements in transom lifters and locks, on the surrender of the original letters patent No. 136,801, dated March 11, 1873, are void for want of patentable novelty in the invention described and claimed in them.

Reissued letters patent No. 10,264, granted December 26, 1882, to John F. Wollensak for a new and useful improvement in transom lifters, on the surrender of the original letters patent, dated March 10, 1874, are void as to the claims sued on, by reason of laches in the application for a reissue.

The fact that the patentee followed the advice of his solicitor in delaying to apply for the reissue within due time does not justify the delay.

THIS was a consolidated bill in equity founded on two reissued patents granted to appellant for improvement in transom lifters as follows: No. 9307, July 20, 1880, original patent No. 136,801, March 11, 1873, and No. 10,264, December 26, 1882, original patent No. 148,538, March 10, 1874. Appellee was charged with the infringement of the third claim of the reissued patent No. 9307, and the third, fourth, fifth, sixth, and ninth claims of reissue No. 10,264.

The Circuit Court, on pleadings and proofs, held reissue No. 9307 invalid for want of patentable novelty, and, on demurrer, reissue No. 10,264 void as to the claims relied on, for laches apparent on the record and not sufficiently explained by the allegations of the bill.

The opinion of Judge Shipman on motion for preliminary injunction is reported in 33 Fed. Rep. 840, and that on final hearing in 41 Fed. Rep. 53.

*Mr. Ephraim Banning,* (with whom was *Mr. Thomas A. Banning* on the brief,) for appellant.

*Mr. John Kimberly Beach* for appellee.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

1. The specification and claims of reissue No. 9307 are as follows:

"Transom lifters have heretofore been constructed with a long upright rod or handle jointed at its upper end to a lifting arm which extends to and is connected with the side or edge of the transom sash, the sash being opened or closed by a vertical movement of the long rod. When thus constructed the upright rod is liable to be bent by the weight of the transom, owing to the want of support at or near the point of junction between the long rod and the lifting arm.

"The object of my invention is to remedy this difficulty; and to such end it consists in providing the proper support or support and guide for the upper end of the lifting rod during its vertical movements and while at rest.

"This may be accomplished in a variety of ways, one of which I will now proceed to describe in detail, although I wish it clearly understood that I do not limit my invention to this construction, but regard it as covering broadly any construction, combination, or arrangement of parts which shall support the long or operating rod and prevent it from being bent or displaced by the weight of the transom.

"In the drawings, D is the door; T, the transom sash, pivoted at top, bottom, or middle, as preferred; A, the lifting arm that connects the sash to the upright rod; U, the upright rod, passing through two guides, GG', one above and one below the point of junction with the lifting arm; R, a friction roller secured to the lifting rod so as to bear against the wall and support said rod at its point of junction with the lifting arm; *nn*, notches cut in the upright rod to receive the end of the set screw; and *s*, a set screw arranged, in connection with the lower guide and the rod U, so as to be convenient of operation for the purpose of fixing the transom at any required angle. The upright rod is thus supported at three points, to wit, above, below, and at the joint where it sustains the weight of the transom. It can also be adjusted and securely fastened so as to open the sash as much or as little as may be desired, and to lock it in that position.

"Having thus described my invention, what I claim as new is —

"1. The combination, with a transom, its lifting arm and operating rod, of a guide for the upper end of the operating rod, to prevent it from being bent or displaced by the weight of the transom.

"2. The roller R, arranged at the junction of the lifting arm A and upright rod U in a transom lifter, substantially as and for the purpose described.

"3. The guide G', arranged above the junction of the lifting arm and upright rod, in combination with the prolonged rod U, the guide G, and arm A, substantially as and for the purpose specified."

In the matter of the action of the Patent Office upon this reissue, it appeared from the file wrapper and contents that the claims were rejected by the examiner on reference to the patent of Bayley and McCluskey, No. 79,541, July 7, 1868, and that his decision was reversed on appeal by the examiners-in-chief, who held, among other things, that "Wollensak's device is, in the first place, a 'lifter' designed for raising against gravity a transom, hinged and swinging horizontally. The improvement covered by the claim consists simply in

furnishing the vertical operating rod with a guide above the lever connection, as well as below, to prevent the rod from being bent and displaced and thus impaired for operating, as occurs with the old form." In the statement of the case and the points relied on in support of the appeal, it was said :

"Prior to Wollensak's invention, transom lifters had been composed of a long vertical rod arranged to move through guides on the door casing, its upper end projecting a considerable distance above the upper guide and jointed to the transom by a pivoted connecting rod. An example of the lifter is shown on the transoms of the examiners-in-chief's rooms.

"The upper projecting end of the lifting rod has no lateral support, and, being made of a small iron rod, is liable to be easily bent.

"The function of the rod is to sustain the weight of the transom in opening and closing, and as the end of the connecting rod pivoted thereto moves in the arc of a circle while sustaining the weight of the transom, such weight is transmitted to the long upper end of the operating rod in a lateral direction, and has the effect of bending it to such an extent as to prevent it from moving freely through the guide. The bends are either permanent and destroy the rod for practical use, or the rod vibrates above the guide and thus binds therein. To overcome these defects, Wollensak provides a guide for the upper end of the rod, by which its movements are steadied and the lateral bends prevented. Many expedients may be resorted to for guiding the end of the rod, one of which he shows and describes.

"The rejected claims cover this guide in combination with the rod and transom, and the rod, transom, and lifting arm."

The reissue was before this court in *Wollensak v. Reiher*, 115 U. S. 87, 94, and the case disposed of on the ground of non-infringement. And the court there said: "The specification of the complainant's patent undertakes broadly to describe the invention, intended to be embraced in it, as 'any construction, combination, or arrangement of parts which shall support the long or operating rod and prevent it from being bent or displaced by the weight of the transom.' But, having refer-

ence to the state of the art at the date of the alleged invention, and the claims of the patent, the patentee must be limited to the combination, with a transom, its lifting arm and operating rod, of a guide for the upper end of the operating rod, prolonged beyond the junction with the lifting arm so as to prevent the operating rod from being bent or displaced by the weight of the transom. Putting by the question whether this is a patentable invention in view of the existing state of the art, the claim must be regarded as a narrow one, and limited to the particular combination described." After this decision was announced, the first claim was disclaimed, and the patent limited to the second and third claims.

The Circuit Court rightly held that the guide above the junction and the prolongation of the rod constituted the improvement. It is now insisted that the third claim embraced the elements of the transom window T, the lifting arm and bracket A, the upright rod U, the guide G' near the upper end, the guide G, including set screw *s* near the lower end, and an intermediate guide not lettered. This adds to the specific elements of the claim, the set screw *s*, an intermediate guide and a bracket A. The argument is that the third claim is a specific combination claim and includes the elements, expressed and implied, of a transom window, swinging vertically; a bracket on the window projecting outwardly; a lifting arm hinged to the bracket; an upright rod jointed to the lifting arm; a guide and support G'; a guide and support G near the lower end of the upright rod and provided with a set screw to lock it; a third guide and support located between G and G'; and it is assigned as error that the Circuit Court erred "in not construing the third claim of reissue No. 9307 to be for the specific form of transom lifter shown and described; and in not holding that various features were sufficient, separately, or together, to impart novelty and patentability to the construction as a whole." But the reissued patent cannot be treated as covering a claim for the whole transom lifter as improved. What the patentee declared his invention to consist in was in providing "the proper support or support and guide for the upper end of the lifting

rod" And .we do not regard ourselves as justified in. importing into the claim elements that would operate to so enlarge its scope as to cover an invention not indicated upon its face. *Day* v. *Fair Haven & Westville Railway*, 132 U. S. 98, 102.

The Circuit Court was of opinion that the inventor naturally extended his rod beyond the junction with the lifting arm, and provided a support for the end of. the prolonged rod, and that this did not seem to have a patentable character, but to be the obvious suggestion which would occur to any mechanic. The patent itself declared that "transom lifters have heretofore been constructed with a long upright rod or handle jointed at its upper end to a lifting arm which extends to and is connected with the side or edge of the transom sash, the sash being opened or closed by a vertical movement of the long rod;" and there can be no doubt that they were common contrivances for opening and closing apertures at a distance from the hand of the operator. *Aron* v. *Manhattan Railway*, 132 U. S. 84. The conclusion that the prolongation of the rod and its confinement within an additional metallic loop, thereby providing a support where it was needed, lacked patentable novelty, appears to us unavoidable on comparison with the Bayley and McCluskey patent of July 7, 1868.

In that patent an invention was described for the opening and closing of a series of passenger car ventilators or transoms, which consisted of a long rod sliding horizontally in a series of guides, past a series of windows, and connected with each window by a separate arm, so that by sliding the rod backward or forward the windows would be opened or shut. If this device were turned into a vertical position, it would present the combination of the third claim under consideration. The parts of the device would coöperate in the same way whether used horizontally or vertically, and the window would swing outward or inward according to whether it was hinged at one end or the other. The complainant's expert testified that it was of the essence of the third claim that it should be used in a vertical position, and that if the defendant's transom lifter were used horizontally, so as to open a

transom swung sideways, it would not then be described by the language of the third claim, because it would not be a transom lifter. But if the mechanical identity with the Bayley and McCluskey device be admitted, as it was in substance by complainant's expert, it cannot be distinguished by importing additional elements into the claim not described in the patent as the invention of the patentee, or upon the suggested distinction between a transom lifter and a transom opener. The novelty must be a novelty in the means or mechanical device, and not in the use to which the combination is put. *Knapp* v. *Morss*, 150 U. S. 221.

2. Reissue No. 10,264 was under consideration in *Wollensak* v. *Reiher*, 115 U. S. 96, and it was held that the delay in the application invalidated it in the absence of special circumstances showing that such delay was reasonable. The original of this reissue was dated March 10, 1874, and the application for the reissue was filed May 31, 1882, so that a lapse of eight years was to be accounted for. The bill averred that, upon discovering the mistake in his original patent, complainant wrote to his solicitors, but at what date does not appear. It was further alleged that some considerable delay was occasioned by the illness of his solicitor, but the first date given is April 9, 1878, that of a letter from the solicitor advising him not to apply for a reissue of No. 148,538, but for a reissue of No. 136,801, which he did, and obtained reissue No. 9307. A second period of four years elapsed before the application for reissue 10,264 was filed. The bill stated that after complainant had obtained his reissue No. 9307, which was dated July 20, 1880, he filed a bill in equity against Reiher in the Circuit Court for the Northern District of Illinois to restrain him from infringing the same, which suit was decided by Judge Drummond on April 25, 1882, against complainant; that he had previously prepared an application for a reissue in No. 148,538, which was executed by him August 21, 1880, but for some reason unknown to complainant was never filed in the Patent Office, and his solicitor, to whom he forwarded it, died about January, 1881; that he afterwards employed other counsel, who advised him that inasmuch as he had a patent in

terms broad enough to cover the invention, he had better delay the filing of the application until the infringèment suit could be heard and determined; "that the delay in applying for a reissue of said patent after your orator became aware of the defect in the original patent, No. 148,538, was because of the advice aforesaid, and that the delay that occurred before that time was due to the fact that your orator was young and inexperienced in such matters, never before having had occasion to take out a reissued patent or otherwise become familiar with the law in relation to reissues, and to the further fact that your orator was then struggling to build up his business and unable to incur or assume any more expense in the obtaining of patents than was considered actually necessary for the protection of his business." The bill then referred to the action of the examiners-in-chief in his favor.

We fail to find in this such excuse or explanation of the lapse of time as can properly be recognized as sufficient. Complainant elected not to apply for a reissue until at least four years after he discovered the alleged mistake, and could not retain his right to correct the mistake while he speculated on the chances of including the omitted claims in a reissue of patent No. 136,801. Nor can he be regarded as occupying any different position upon the averment that he would have seasonably applied but for the advice of his counsel.

In *Ives* v. *Sargent*, 119 U. S. 652, 661, 662, *Wollensak* v. *Reiher*, 115 U. S. 96, and *Mahn* v. *Harwood*, 112 U. S. 354, are cited with approval, and it is declared to be settled that while no invariable rule can be laid down as to what is a reasonable time in which the patentee should seek for the correction of a claim which he considers too narrow, a delay of two years, by analogy to the law of public use, before an application for a patent, should be construed equally favorably to the public, and that excuse for any further delay than that should be made manifest by the special circumstances of the case, and it. is said: " In the present case no special circumstances in excuse for the delay are alleged. The excuse proffered is simply an attempt to shift the responsibility of the mistake made, from the patentee to his solicitor; but no

excuse is offered why the patentee did not discover the negligence and error of his solicitor in due time. On the contrary, he assumed, without examination, that the specification and claims of his patents were just what he had desired and intended they should be, and rested quietly in ignorance of the error and of his rights for nearly three years, and then did not discover them until after others had discovered that he had lost the right to repair his error by his neglect to assert it within a reasonable time."

In the case in hand the excuse put forward is that the patentee followed the advice of his solicitor, and, therefore, did not apply within due time. Manifestly this will not do. *Dobson* v. *Lees*, 137 U. S. 258.

As the charge of infringement related to claims which were expansions of the original claims and not covered by them, *Wollensak* v. *Reiher*, 115 U. S. 96, the demurrer was properly sustained.

*Decree affirmed.*