# PORTER *v.* LOUDEN.

PATENTS; INTERFERENCE ; DIVISIONAL APPLICATION ; BURDEN OF
PROOF ; PRIORITY OF INVENTION ; REDUCTION TO
PRACTICE.

1. There is no proper line of division between one application cover-
ing a specific device and implying certain adjuncts and another
application by the same inventor for the combination of the de-
vice and the adjuncts, and one application should not go to pat-
ent while the other is in interference.

2. When an application goes to patent upon a claim which is not a
proper division of another application in interference, the paten-
tee should derive no advantage in an interference by presump-
tion from the fact of issue of the patent on divisional applica-
tion ; but, coming in subsequently to the filing of his opponent's
claim, by claim of prior invention, he should bear the burden
that such claim naturally imposes as between contending appli-
cants in the production of proof as applied to both interfer-
ences.

3. The filing of an allowable application for a patent constitutes a re-
duction to practice.

4. An exhibit attached to the record in a patent interference case,
which does not show the identical thing in issue, and which was
manifestly designed and intended as a mere working model and
nothing more, may be the evidence to lay the foundation of a
claim to priority, but is not of itself sufficient evidence of re-
duction to practice of the alleged invention.

5. A delay of six years, unexcused by sickness or poverty, *held* fatal
to a claim of priority of invention depending upon connecting
an earlier conception to a later reduction.

No. 26. Patent Appeals. Submitted May 14, 1895. Decided Sep-
tember 30, 1895.

HEARING upon appeal from a decision of the Commis-
sioner of Patents in an interference proceeding upon appli-
cations for patents for improvement in tracks and track-
hangers. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Mason, Fenwick & Lawrence* for the appellants.

*Mr. H. A. Seymour* and *Mr. A. W. Bright* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This appeal is from the Commissioner of Patents, and the record embraces two interferences, Nos. 15,822 and 15,939. There is, in fact, only one invention involved in the issues of the two interferences declared; and the subject-matter of the issues framed is an improvement in hay carrier tracks, the object of the particular improvement being to so construct the track that all the necessary attachments and appliances necessary to its free operation, such as hanger hooks and stop blocks or knockers, may be adjustably secured to it without the necessity of drilling holes in the track, and without interfering with the free movement of the carrier thereon.

The issue of the first interference declared (No. 15,822) is as follows:

"*A rail having a vertical web*, an upper bead, a lower bead, and intermediate horizontally projecting flanges for a carrier, in combination with a hanger adapted to engage the upper bead of the rail, and a stop secured to the lower bead of the rail and adapted to be adjusted thereon independently of the hanger and the carrier."

And the issue of the second interference declared (No. 15,939) is thus stated:

."A metallic track for a hay-carrier, consisting of an upper T-head for connecting suspending means, a lower T-head for connecting a stop block or knocker, *a deep vertical strengthening web*, and intermediate horizontal wheel-supporting flanges for the wheels of a hay-carrier to run upon."

The first of these interferences was declared September 10, 1892, between the applications of William Louden, the present appellee, filed December 5, 1891, Henry H. Durr, filed March 18, 1892, and Joseph E. Porter, filed May 10, 1892. The second interference (No. 15,939), was declared January 9, 1893, between the same applications of Louden and Durr, and a patent issued to Porter December 13, 1892, on an alleged divisional application, the subject-matter of which was taken out of his first application and filed in the Patent Office November 4, 1892—nearly two months after the first interference had been declared, and after the preliminary statements were open to all the parties concerned. In fact and reality, both issues seem to be based on identically the same mechanical principle and structure, with but slight variation in phrases of description.

The questions on these issues were examined and decided in the Patent Office, first, by the examiner of interferences, who decided adversely to the appellant, Porter, and in favor of the appellee, Louden ; second, on appeal, by the examiners in chief, who reversed the rulings of the examiner of interferences on both issues, and decided in favor of the appellant, Porter, and against the appellee, Louden ; and third, on appeal to the Commissioner in person, the assistant commissioner reversed the rulings of the examiners in chief, and decided in favor of the claim of Louden on both issues of interference ; and from these latter rulings Porter has appealed to this court.

The issues present the question of priority of invention, with the incidental questions of good faith in asserting claim, the completing of the invention by reduction to practice, and the exercise of reasonable diligence in perfecting the invention before making claim.

There would seem to have been an unwarrantable departure from good practice, as also a disregard of the provisions of the 106th rule of the Patent Office, in allowing a division of the claim of Porter, and the issue of patent 487,966 to him, on a divisional application, during the pen-

dency of the first interference declared. Rule 106, relating to divisions of claim, is as follows : " When a part only of an application is involved in an interference the applicant may withdraw from his application the subject-matter *ad-iudged not to interfere*, and file a new application therefor, · or he may file a divisional application for the subject-matter involved, *if the invention can be legitimately divided;* provided, *that no claim shall be made in either application broad enough to include matter claimed in the other."*

It does not appear that there was any express adjudication that the claim of Porter set forth in patent 487,966 did not interfere with claims made by Louden or Durr, though it was held by the examiners in chief that such claim was patentable. But after the first interference declared, Porter, by his attorneys, addressed an application to the Commissioner, in which he says, that he transmits an application for a patent for an improved track for hay-carriers and elevators. The application, he says, " is a division of the subject-matter of the said Porter's application filed May 10, 1892, No. 432,492, now in interference with other parties on subject-matter embraced in claims 2 and 3 thereof. The subject-matter of this division application is embraced in claim 1 of application No. 432,492, which claim is not included in said interference. When the interference is determined Mr. Porter binds himself to make the necessary amendments to the specification and to cancel claim 1 of his application filed May 10, 1892, No. 432,492, or will do so now if permissible. Mr. Porter requests under rules of practice that the patent on this division application be issued without waiting the determination of the interference, as the invention claimed here is not involved in the interference, and has so been declared by the Patent Office by its exclusion therefrom."

When counsel alleged that Porter's claim as set out in the divisional application and specification was not involved in the previous interference declared, and had been so declared by the Patent Office by its exclusion therefrom, they

simply alleged that to be their construction of the issue that had been framed in the Patent Office. There was no such express exclusion. Upon filing the specification and defining the claim, the patent accordingly issued December 13, 1892 ; and the claim and the patent founded thereon were placed in interference on the 9th of January, 1893—the claim set forth in the patent constituting the second issue of interference already recited. This latter interference was declared upon the theory that the divisional application of Porter was broad enough to, and did include matter claimed in the original application and involved in the first interference declared, and should, therefore, have awaited the determination of the question of priority presented by the first issue of interference. And supposing the divisional application to cover or embrace any material part of the subject-matter of the invention involved in the prior interference, it was manifestly improper to issue the patent 487,966 before the question of interference was determined. The patent once issued became at once beyond the power of recall or vacation by the Commissioner of Patents ; and though the party with whom the patentee was involved in interference might be shown to be entitled to priority of invention, and have a superior right to a patent therefor, yet his right would be clouded and embarrassed with further litigation, in order to secure to him his rights under his patent. Moreover, it is a well-settled principle, that where two patents show the same invention or device to have been issued to the same party, the later one is void, although the application for it was first filed ; the cases thereby holding that it is the issue date and not the filing date which determines priority to patents issued to the same inventor on the same machine. *Suffolk Co.* v. *Hayden,* 3 Wall. 315. If, therefore, the claim upon which the first patent issued be identical with or only colorably different from the claim involved in the previously pending interference, no second patent should issue to the holder of the prior patent, as such subsequent patent would be simply void. This prin-

ciple is well stated by Mr. Justice JACKSON, in the case of *Miller* v. *Eagle Manf. Co.*, 151 U. S. 186, 198, and S. C. 66 O. G. 845, where he says that the result of the authorities is, "that no patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ ; that the second patent, although containing a broader claim, more general in its character than the specific claims contained in the prior patent, is also void ; but that where the second patent covers matters described in the prior patent *essentially distinct and separable from the invention covered thereby and claims made thereunder*, its validity may be sustained. But in this last class of cases it must distinctly appear that the invention covered by the later patent *was a separate invention, distinctly different and independent* from that covered by the first patent ; in other words, *it must be something substantially different from that comprehended in the first patent.* It must consist in something more than a mere distinction of breadth or scope of the claims of each patent. If the case comes within the first or second of the above classes, the second patent is absolutely void." And this is so, regardless of the material of which the machine may be constructed.

If, therefore, as contended by the appellee, Louden, there is in substance and reality but one invention involved in the interferences declared, the difference being only in terms of description employed in framing the issues, it is clear Porter had no right to the patent that issued to him on the divisional claim, unless, and until, he succeeded in the original pending interference. And in view of all the facts of the case, and of the conduct of the parties, we think Porter should derive no advantage by presumption from the fact of the issue of the patent on the divisional application ; but coming in as he does subsequently to the filing of the claim of Louden, by claim of prior invention, he should bear the burden that such claim naturally imposes as between contending applicants, in the production of proof as applied to both interferences.

We entirely agree with the examiners in chief that the invention of the two interferences, Nos. 15,822 and 15,939, is substantially the same, and turns upon the same facts in evidence; the essential matter of each interference being the metallic track with lateral wheel-supporting flanges, and upper and lower vertical webs and T-heads adapted respectively for connecting suspending means, and a depending stop block or knocker—the said adjuncts being implied in the issue of interference No. 15,939 (the claim stated in the patent), and expressed in combination in interference No. 15,822. The same conclusion, in effect, is maintained by the examiner of interferences and by the assistant commissioner. And so concluding from the facts before them, the examiner of interferences, while conceding the priority of conception of the invention to Porter, held that he had not prosecuted the conception to practical completeness, and had not used due diligence in perfecting the invention, so as to preclude others who were later to conceive, but earlier to complete, the invention, by filing applications, which, under the well settled practice of the Patent Office, constitutes a constructive reduction to practice. He therefore held that Louden was entitled to priority of invention of the subject-matter involved in both interferences.

From this ruling Porter appealed to the examiners in chief, and they reversed the ruling of the examiner of interferences, and held that Porter was not only the first to conceive, but had used reasonable diligence in perfecting and reducing to practice his invention; and they therefore held Porter to be entitled to priority and to a patent for the invention. But this ruling was reversed on appeal by Louden to the Commissioner in person; and the Acting Commissioner concurred in conclusion with the examiner of interferences, and though conceding Porter to be the first to conceive, yet held that he had not reduced the invention to practical form, and had not exercised reasonable diligence in his efforts to perfect the invention so as to give

him prior or superior rights to those of Louden, who was subsequent to conceive, but first to constructively reduce to practice, by filing *an allowable application* December 5, 1891. All the examiners of the Patent Office who have passed upon this case, including the acting Commissioner, concur in holding that Louden conceived the invention of the issue in August or September, 1889, and filed his *completed* application for a patent disclosing the invention, December 5, 1891, within reasonable time. And the only difference among the officials of the Patent Office relates to the questions of reduction to practice, and the exercise of reasonable diligence by Porter. It was upon these grounds, and these only, that priority was denied to Porter and awarded in favor of Louden.

On the question of priority of conception of the invention involved, the testimony is irreconcilably conflicting, and on this evidence we should have great difficulty in bringing our minds to a satisfactory conclusion that Porter was in fact the first to conceive the invention in issue. It is shown, among many other facts reflecting upon this question, that, between the years 1886 and 1892, Porter was diligent in applying for and obtaining patents for a single-beaded rail for the same object, and actually supplied the market therewith: and yet he utterly neglected his alleged double-beaded rail, alleged to be of prior invention, and which he now claims was and is a valuable improvement upon all inventions of the kind of date prior to the application involved in this interference. But we do not find it necessary to pass upon this question. The Patent Office officials having concluded that Porter was the first to conceive the invention of the double-beaded rail, we are willing to assume such to be the fact, and thus reduce the case to the questions of reduction to practice, or the exercise of reasonable diligence on the part of Porter to complete the practical development of the invention so as to make it patentable.

On the question of reduction to practice or the completion of the invention, it was held by the examiner of inter-

ferences and the acting Commissioner, that the rail made
and shown by Porter as Exhibit E, filed with his applica-
tion, was not the rail designated in and covered by the issue
of interference ; that while it might serve to illustrate how
such rail as claimed by him ought to be made, yet it was
not intended as the rail described in the issue, and did not
amount to anything more than a mere model to direct in
completing the invention.   They further held, that there
had not been reasonable diligence on the part of Porter in
perfecting his invention.

It is urged that Louden has not done more to perfect his
·invention than Porter has done to perfect his.   But it is
conceded that Louden exercised due diligence to, and did,
secure the embodiment of the invention to practical work-
ing form ; and this would seem to be all that is required.
It has been repeatedly decided that the filing of an allow-
able application constitutes a reduction to practice ; and this
was done by Louden.   It is not necessary that the inven-
tion be *actually* reduced to practice in order to be patent-
able.   As said by Mr. Commissioner Mitchell, in *Lorraine*
v. *Thurmond*, 51 O. G. 1781 (Com. Dec., 1890, p. 90):
" No such condition is required by the act of Congress ;
and if it were true that a patent would be void on that
ground, no patent could properly be granted unless proof
was furnished that the invention claimed had gone into
practical use, which is not, and cannot, under the statute,
be made a condition of granting the patent.   It is enough
that the inventor has perfected his invention, and is able to  ·
furnish the Patent Office such specification and model as the
law requires.   Having done this, the patent in so far as pre-
requisite to its validity, either by way of experiment or use,
are material, is valid.   When the invention is not of a mere
philosophical speculation, abstraction or theory, but of
something corporeal, something to be manufactured, the
applicant need not show that he has reduced his invention
to practice otherwise than by filing his specification and
furnishing drawings and a model, as required by the stat-

ute, when the nature of the case admits of drawings or of a representation by model."· To the same effect is the decision of the Supreme Court in the *Telephone· Cases*, 126 U. S. 535.

Here, Louden was first to file an allowable application, and thus reduced his invention to practice by construction, though not to actual practice. The subsequent original application of Porter was filed more than five months, and the divisional application about eleven months, after that of Louden; and Porter, in support of the allegations contained in his preliminary statement, produced in evidence sketches and a wooden model made, as he alleges, about the time or soon after his conception of the invention. These he filed for the purposes of illustration merely; and as evidence of his having reduced the invention to practical form, he produced the rail which is in the record as Ex-, hibit E. Now, if this Exhibit E is the rail designated in and covered by the issue, and is to be considered as a completed model of the invention involved in the interference, and the making and exhibiting of such model is reduction· to practice, then upon the assumption that Porter was the first to conceive the invention, he might, indeed would, be entitled to priority, as, according to his testimony, the rail thus exhibited was made anterior to the date of conception alleged by either Louden or Durr. But is the rail shown in Exhibit E of sufficient completeness to be identical with the rail described in the issue of interference? Or is it a mere working model, intended for illustration of the thing invented? This rail or track, as shown in Exhibit E, is a short section about three feet long, and is made of two separate T-rails riveted together along their base flanges. The bead or head is formed by riveting on each side of the outer edge of the webs small strips of metal. The rail involved in the issue of interference is in one piece, and the deep-vertical strengthening web is one of the most material features of the invention, according to Porter's own claim inserted in Patent No. 487,966, and which forms the issue

in this case. No doubt, as was said in *Loom Co.* v. *Higgins*, 105 U. S. 580, 594, an invention relating to machinery may be exhibited either in a drawing or in a model, *so as to lay the foundation of a claim to priority*, if it be sufficiently plain to enable those skilled in the art to understand it. But it is quite a different question as to reduction to practice. The distinction was fully and clearly noted by Commissioner Mitchell, in the case of *Green* v. *Hall* v. *Siemens* v. *Field*, 47 O. G. 1631, 1632, where, upon a motion for a rehearing of a decision of his predecessor Hall, he said:

" It is to be observed, however, that Commissioner Hall did not hold that a drawing or a model might not ' lay the *foundation* of a claim to priority,' and it is quite clear that the foundation to such a claim might be established by a model which would not *in and of itself* constitute a reduction to practice. A drawing illustrative of an invention may lay the foundation of a claim to priority ; but no decision has ever held that a drawing constitutes reduction to .practice. So, too, a model ' designed and intended as such ' (I quote Commissioner Hall's exact language) may lay the foundation for a claim of priority ; but I am unaware of any decision which has ever held that such a model constitutes reduction to practice. Indeed, it will be noted that in *Loom Co.* v. *Higgins, supra,* the court classed a drawing and model together in stating what effect they would have as proof, and the inference that the court intended to hold that a model is reduction to practice would be no more legitimate than would be the imputation to it of a purpose to say that a drawing constitutes reduction to practice. This view is not without warrant in judicial decisions, for in *Odell et al.* v. *Stout,* 29 O. G. 862, in which the passage from *Loom Co.* v. *Higgins* was cited, it was expressly held that a model or drawing, although a *sufficient foundation* for a claim to priority, must be followed up with reasonable diligence in order to establish full title to priority." And further on he says : " I have examined the decisions care-

fully, and I am unable to find any statements warranting this allegation of error. The Commissioner did not decide what was Hall's ultimate intention with reference to his invention ; he simply decided that certain models were designed and intended as models. The intention to use the models for illustrative purposes, like drawings, and for no other purpose, is entirely consistent with the intention ultimately to construct a railway upon the same principle, if it should be found capable of practical application upon trial, upon a commercial scale of operations. All that is decided with reference to intent relates to the present intention to use the models as models, and not to the ultimate intention which Hall had in mind and which he used his models to illustrate. If the finding had included the express statement that all along during the period of the making and use of these illustrative models Hall intended that his invention should be ultimately employed practically on electric railways, it could have made no difference whatever with the conclusion reached. It has already been seen that the working models were not reduction to practice, and hence it follows that in an utter absence of diligence for more than a quarter of a century there is no possible ground for an award of priority as against a subsequent inventor who displayed diligence in filing his caveat, diligence in applying for a patent, *which application itself constitutes constructive reduction to practice,* and diligence in introducing his invention into public use."

It is clear, we think, that Exhibit E, while it may be evidence to lay the foundation of a claim to priority, is not of itself sufficient evidence of the reduction to practice of the alleged invention. It does not in fact exhibit the identical rail described in the issue of interference ; and it was manifestly designed and intended as a mere working model, and nothing more. If it had been intended as the completed model and representation of the invention, why was such delay allowed to intervene before making the application ? There is no satisfactory answer to this question afforded by the evidence.

But then, seeing that there is no sufficient evidence of a reduction of the alleged invention to practice within the contemplation of the law, the question still remains to be determined, upon the assumption of priority of conception, whether there has been reasonable diligence exercised by Porter in prosecuting the invention to completion ; for it is necessary in such case that the party alleging the prior conception should show either a reduction to practice, or the exercise of reasonable diligence in the prosecution of the conceptive invention to completion. This principle is clearly stated by Commissioner Mitchell, in the case of *Christie* v. *Seybold*, 54 O. G. 954, as follows :

"A review of all the cases in connection with the language of the statute satisfies me that if the first person to conceive would prevail over his rival, *who has first reduced the invention to practice*, he must show that he was using reasonable diligence in adapting and perfecting the invention when his competitor entered the field. He must show that his diligence antedates the inceptive invention of his rival if he would prevail over him, and he must show that his diligence extends back to his own conception if he would carry his invention back to the date of that conception. Cases exist where the first person to conceive is not entitled to be accredited with diligence extending back to his actual date of conception. In such cases it is probably only material to inquire whether the diligence which the statute calls for antedates the inceptive invention of the person first to reduce to practice. But it is material and necessary that the diligence antedate the independent conception of the rival inventor, as otherwise no injustice would be done by recognizing the case as coming within the general rule *that the first to reduce to practice is the first inventor.*" The same principle is fully and clearly enunciated, and the decision of Commissioner Mitchell on this question referred to and appoved by the United States Court of Appeals, in a case between the same parties, reported in 55 Fed. Rep. 69. The like doctrine is enforced in many other cases referred

to in the briefs of counsel in this case. A party who conceives a new device or invention and proceeds only so far as to embody it in rough sketches or drawings, or even experimental or working models, cannot stop there, and still be able to hold the field of invention against all other inventors for an indefinite time. The law will not reward, or even tolerate, unreasonable delay in the application for the grant of monopolies under our patent system. Punctuality and due diligence, equally with good faith, are essential requisites to the success of those who seek to obtain the special privileges of the patent law. This is demanded as well in the interest of the public as for the protection of rival inventors. *Wollensak* v. *Sargent*, 151 U. S. 221, 228.

On the questions of reduction to practice and of the want of reasonable diligence of Porter, in the prosecution of his alleged invention, the facts, and the deductions therefrom, are well and clearly stated both by the examiner of interferences and the acting Commissioner. In the opinion of the latter official, he comments upon the testimony produced in support of the claim of Porter in the following pertinent terms:

" Porter's testimony shows that he conceived and disclosed the invention, and made the drawing and the model in 1886. He also claims that he reduced to practice in October of that year, presenting as proof of this claim the rail, 'Exhibit E.' This is a short rail section built up by riveting two T-rails together at their bases, with the beads or heads at top and bottom formed by riveting strips of metal on each outer edge of the web.

" Louden contends that this rail was not made in 1886, but the conclusion hereinafter reached renders it unnecessary to consider this point. This rail, however, is not the rail covered by the issue. It may serve to illustrate how such a rail ought to be made, but I can not consider it as amounting to anything more than a model.

" It remains to be considered, therefore, whether Porter's

actions from July, 1886, until the filing of his application, show a reasonable amount of diligence. The excuse offered by Porter for this delay of nearly six years, is that he could find no manufacturer who could roll the rail covered by the issue. The evidence upon this point, in my opinion, does not show that he was constantly endeavoring to procure the rolling of his rail, and this conclusion is supported by the fact that during this period he obtained other patents for hay-carrying devices, and did not even file an application covering the present invention.

" It must be strong testimony, indeed, that would excuse a delay of nearly six years, which, it is practically admitted, was not caused by sickness or poverty, and during which time no action was taken except to inquire at intervals whether such rails could be rolled. Moreover, even if it were conceded that mere attempts to get the rail rolled show diligence, and negative the idea of abandonment, yet these efforts were so few and far between that I am unable to reach the conclusion that Porter acted with reasonable diligence."

In this conclusion we entirely concur; and without further elaboration or comment we shall affirm the rulings appealed from in both interferences, and direct that a certificate of the proceedings and decision in this court be sent to the Patent Office, to be entered of record therein, as directed by law.

*Rulings affirmed and certificate ordered.*