## KNIGHT v. RIEGER et al.†

### (Circuit Court of Appeals, Fourth Circuit. February 3, 1914.)

### No. 1188.

PATENTS (§ 328*)—COMBINATION OF OLD ELEMENTS—MAUSOLEUM.

The Knight patent, No. 979,965, for a mausoleum in which a number of features which were old in the art are brought together, does not disclose a patentable combination, since the parts do not co-operate to produce any new or unitary result, and is void for lack of patentable novelty.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit in equity by Maurice L. Knight against Henry P. Rieger, John Drobisch, Laura Praeger, Christian B. Ohrenschall, and Henry P. Rieger & Co., Incorporated. Decree for defendants (203 Fed. 49), and complainant appeals. Affirmed.

E. Hayward Fairbanks, of Philadelphia, Pa. (William R. Barnes, of Baltimore, Md., on the brief), for appellant.

William B. Smith, of Baltimore, Md., for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. The patent in suit, No. 979,965, was issued to appellant, complainant below, on December 27, 1910, for a mausoleum. In the specification on which his application was made he states that his invention consists of (1) "improved means for obtaining ventilation and drainage of the crypts or loculi in a mausoleum or vault," (2) "improved means for closing and sealing the crypts or loculi in a vault or mausoleum," and (3) "other novel features of construction."

The appellees are sued for infringing this patent, and their defense, which was sustained by the trial court, puts in issue the fact of infringement and the validity of the patent.

It does not appear that anything is now claimed on account of "other novel features of construction," whatever the phrase may have been intended to include; nor do we discover in the record or brief of appellant any distinct assertion of novelty in the "improved means for closing and sealing the crypts." The only serious contention therefore relates to the "improved means for obtaining ventilation and drainage," as the same are described in different ways in all, except the third, of the six numbered claims of the specification.

It will aid a correct understanding of this contention if we first put aside certain matters of controversy which have no bearing upon the questions to be decided. In the briefs of counsel, and particularly in appellant's brief, much space is devoted to a history of the litigation. So far as this history relates to the development of the art of mausoleum construction, and serves to disclose the difference between plans and methods of appellant and those of other mausoleum builders, it is perfectly legitimate and entitled to full consideration. But the repeated charges of bad faith and unfair dealing, the multi-

plied accusations of fraudulent conduct, not always expressed in temperate language, have no proper place in this discussion. The actual situation of the parties in relation to certain structures heretofore erected, and the acts or inducements which brought about that situation, could at most affect only the relief to which appellant would be entitled in some minor respects if he prevailed on the principal issues; but epithets are not argument and personal ill ·feeling has nothing to do with the merits of the controversy.

Still less relevant are the references to an alleged "Monument Builders' Trust," and the charge that appellees are parties to a conspiracy in restraint of trade whose operations are in flagrant violation of the federal anti-trust law. Even the learned judge presiding at the trial is criticised by implication because he "saw fit in the case at bar to absolutely ignore this feature of the case, and to thus indirectly place the seal of judicial approval upon the appellees' illegal combination in restraint of trade," etc. We cannot escape a feeling of surprise that counsel of standing should take such a position. Of what possible bearing upon the validity of this patent is the fact—if it be a fact—that appellees are violating the anti-trust law? The patent speaks for itself. The alleged invention is fully and clearly described in the several claims embraced in the specification. The validity of the patent and the fact of infringement are here for determination because both are denied. It is absurd to say that appellees' defenses can be overcome or their force in any degree weakened by proof that they have committed offenses for which, in a proper proceeding, they might be subjected to civil and criminal prosecution. It is even more absurd to say that the failure or refusal of the trial court to consider "this feature of the case" involves or implies any "judicial approval" of an illegal combination. If the patent in suit is invalid for any reason which the courts recognize, the appellant is not in the least aided by showing that appellees are guilty of violating the anti-trust law. The court below was clearly right in ignoring this contention, because it is plainly immaterial and should therefore be left entirely out of account.

The questions for decision then are simply these: Is the patent valid? If so, has it been infringed? In passing upon the first question we refrain from expressing any opinion as to the patentability of appellant's invention. The point is made and argued at length by appellees' counsel that section 4886 of the Revised Statutes (U. S. Comp. St. 1901, p. 3382) requires the patentee to be a person who has "invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof"; that the only patentable inventions are those belonging to the classes enumerated in the statute; and that appellant's invention does not come within any of the enumerated classes. We prefer, however, to rest our decision upon other grounds, and therefore deem it unnecessary to discuss a defense which involves the controverted meaning of the statute rather than the actual merits of the invention for which the patent in suit was granted.

The mausoleum of familar type resembles in some degree a minia-

ture temple. As commonly constructed, the door in front opens into a transverse vestibule which occupies the width of the structure. An aisle or corridor extends at right angles from the·vestibule to the rear wall of the mausoleum, and on each side of the corridor are crypts or loculi placed one above the other. These crypts are oblong stone or slate boxes, each of sufficient size to contain a burial casket, and the casket is placed in the crypt through the side which is toward the interior of the mausoleum. The opposite or back side of the bank of crypts is parallel with the inner face of the external wall of the structure.

The method of construction described in the patent is designed to afford means of ventilating and draining the crypts into the open air, while preventing the escape from them into the interior of the mausoleum of the gases or liquids resulting from decomposition. For the purpose of ventilation the patent directs that there shall be a space of some inches in breadth between the back walls of the crypts and the inner side of the wall of the mausoleum. In each crypt are apertures or vents, one or more on the plane of the upper surface of the bottom of the crypt and one or more near the under surface of its top or cover, and these vents open into the air space between the crypts and the mausoleum wall. The latter is pierced with one or more openings at or near the surface of the ground and one or more at the top of the wall. It is also stated to be desirable to have the ceiling fit closely upon the top of the crypts and to leave between it and the roof proper an air space connecting with the vertical air chamber mentioned. On the side next to the corridor the crypts are closed tightly with a suitable slab or wall to prevent any escape of offensive gases into the interior of the mausoleum.

Coupled with this means for obtaining ventilation and drainage of the crypts is the provision for interlocking or securing the back edges of the horizontal shelves, which form the tops and bottoms of the crypts, in or to the wall of the mausoleum, thus securing a solid, connected, and durable structure. The ventilating feature is preserved by cutting out of the rear edge of each shelf for the greater portion of its length a rectangular strip of the approximate width of the vertical air chamber. This rectangular cut is shorter than the length of the shelf, so that there is left at each end a projection which bridges the air chamber and is secured to or interlocked with the mausoleum wall. In the language of the patent:

"The back edges of the shelves are secured in the inner faces of the walls and interlocked with them excepting at the openings forming the air flues."

In the structure which is claimed to be an infringement no part of the shelves referred to extends across or into the air chamber. Instead, as appellant alleges, the back or inner edges of the shelves of the crypts are connected with the mausoleum wall by blocks or filler pieces arranged in pairs and fixed in cement, with suitable wiring, so that when the structure is completed and the cement hardened the shelves become permanently joined with the side wall to substantially the same extent as, and in practically equivalent fashion to, the projecting portions of the shelves of appellant's device. In other words, ap-

pellees' method is claimed to result in the same rigid and durable connection between the bank of crypts and the mausoleum wall. The appellees deny that their method of construction is of the character just described, but, on the contrary, say that what they do is to place a number of bricks or other substances in the air chamber between the back wall of the crypts and the inner face of the mausoleum for the temporary purpose of holding the crypts in place during the process of construction, and that such supports are in no sense a part of the permanent structure. The means of ventilation and drainage appear to be substantially the same in both structures.

With this description, which is reproduced in the main from the findings of the trial court, virtually admitted by appellant to be correct, we proceed to a brief analysis of his invention to see if it reaches that degree of novelty and utility which entitles him to the protection of a patent. The mausoleum is of ancient origin. The general plan of the interior of such a structure as above outlined, the construction and arrangement of the crypts, and various devices for securing ventilation and drainage, have been long known and frequently adopted. The specification and claims of appellant's patent appear to describe a complete or nearly complete mausoleum: Of the many parts which compose the described structure, no one separately considered is claimed to embody any new or novel principle. Each of the elements used by him has been often employed in substantially the same way and for substantially the same purpose. As we understand his contention, the appellant claims only the right to a patent "for a new combination of old devices, coupled with which is the additional element of the shelves for the support of the coffin or casket, each having their back edges secured in or to or interlocked with the juxtaposed wall of the mausoleum structure."

But precisely what are the "old devices" which he has combined? He disclaims contending "that there was any invention per se in attaching a shelf to a wall, or that the patent in suit involved as its salient feature such securing of a shelf to a wall." But apparently this form of construction must be one of the elements or "devices" which enter into his combination. Otherwise, it would not be so strenuously contended that appellees' method, or alleged method, of connecting the crypts with the mausoleum wall, produces the same result as appellant's method and should be held to infringe his device. Indeed, it seems evident that appellant regards his plan of projecting portions of the shelves to be secured in or to the mausoleum wall, or some similar contrivance, as one of the factors of his invention. But the only other factor or element, so far as we can perceive, is his system of ventilation and drainage, and this system is not shown to possess any feature of novelty which of itself would be entitled to a patent. Nothing else is pointed out as indispensable to or forming an integral part of the combination.

We say that appellant's plan of ventilation and drainage exhibits no novel features, because we are satisfied beyond a reasonable doubt that the fact was so established. The evidence of record shows clearly that for a number of years at least before appellant applied for his patent

mausoleums had been actually constructed, or described in patents already issued, with a vertical air chamber between the superimposed crypts and the mausoleum wall, with apertures or vents from the crypts into the air chamber, and with openings from the latter into the outer atmosphere. These are the three essential parts of appellant's design, and none of them singly or all of them in combination originated with him. It is quite true that his plan differs from others in such minor particulars as the indicated size, location, and number of vents and openings, and in various details of preferred construction. But the variations and departures from previous designs which he introduced, and for which he makes claim, embody no new principle and in our judgment involve no exercise of the inventive faculty. The mausoleum conforming to his specification may be of superior excellence in the respects here considered, but, if so, it is because the improvements are merely such as result from experience and practical judgment, and not because there is anything really novel in the means employed or the results attained. Without entering into minute comparisons, which would needlessly prolong this opinion, it suffices to repeat the conclusion stated above that appellant's plan of ventilation and drainage discloses no substantial feature or quality which entitles him to a patent.

Upon this branch of the case the views we have just expressed are sustained by the highest authority. For example, in Smith v. Nichols, 88 U. S. (21 Wall.) 118, 22 L. Ed. 566, decided 40 years ago and frequently quoted with approval, the rule is laid down as follows:

"A patentable invention is a mental result. It must be new and shown to be of practical utility. Everything within the domain of the conception belongs to him who conceived it. The machine, process, or product is but its material reflex and embodiment. A new idea may be ingrafted upon an old invention, be distinct from the conception which preceded it, and be an improvement. In such case it is patentable. The prior patentee cannot use it without the consent of the improver, and the latter cannot use the original invention without the consent of the former. But a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents doing substantially the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent. These rules apply alike, whether what preceded was covered by a patent or rested only in public knowledge and use. In neither case can there be an invasion of such domain and an appropriation of anything found there. In one case everything belongs to the prior patentee; in the other, to the public at large."

To the same purport is Hollister v. Benedict Mfg. Co., 113 U. S. 73, 5 Sup. Ct. 724, 28 L. Ed. 901, where the rule is again stated in language which seems particularly applicable to this case:

"It is but the display of the expected skill of the calling, and involves only the exercise of the ordinary faculties of reasoning upon the materials supplied by a special knowledge, and the facility of manipulation which results from its habitual and intelligent practice; and is in no sense the creative work of that inventive faculty which it is the purpose of the Constitution and the patent laws to encourage and reward."

Other illustrations of the doctrine are furnished by the following cases, and the prior cases therein cited: Burt v. Evory, 113 U. S. 349, 10 Sup. Ct. 394, 33 L. Ed. 647; Consolidated Roller Mill Co. v. Walker, 138 U. S. 124, 11 Sup. Ct. 292, 34 L. Ed. 920; International Tooth

Crown Co. v. Gaylord, 140 U. S. 55, 11 Sup. Ct. 716, 35 L. Ed. 347; Wollen Sak v. Sargent, 151 U. S. 221, 14 Sup. Ct. 291, 38 L. Ed. 137; Haughey v. Lee, 151 U. S. 282, 14 Sup. Ct. 331, 38 L. Ed. 162.

In the light of these authorities we cannot justly do otherwise than hold that appellant's plan of ventilation and drainage does not of itself disclose any patentable novelty.

The patent in suit therefore must rest upon the asserted novelty of combining means of ventilation and drainage, which are not new, with that form of construction, which is also not new, by which the shelves of the crypts are in some permanent manner fastened to or interlocked with the wall of the mausoleum. But the difficulty here is that the elements in question, whatever particular form either may assume, do not interact or co-operate with each other to produce the common and desired result. Though both are employed in the described structure, they do not appear to be mutually dependent. Obviously, the same means or method may be employed for obtaining ventilation and drainage, and those objects secured, without any permanent or substantial connection between the crypts and the wall of the mausoleum. It is equally evident that the crypts and mausoleum wall, though placed somewhat apart, may be united in such a solid and enduring manner as to be practically one structure, without providing either ventilation or drainage. In the former case the bank of crypts would not only rest upon a separate foundation, but be throughout independent of support from the exterior wall of the mausoleum. In the latter case openings would have to be made in the connecting material, like the rectangular cuts in the projecting shelves of appellant's device, in order to secure ventilation and drainage. In other words, as appears to us, appellant merely brings these two factors into juxtaposition and concurrent use, but does not in fact produce any new or novel combination within the meaning and intent of the patent law. As we see the matter, it comes in reality to the question of the relative desirability of different modes of construction neither of which involves any display of inventive genius. One may be better than another, the appellant's possibly, though by no means certainly, the best of all; but we are quite convinced that nothing has been done or devised by him which can be regarded as a substantial addition to previous knowledge on the subject, or which possesses that degree of novelty and utility which are requisite to sustain a patent based solely on combination.

This conclusion is supported by numerous cases which we have examined and which appear to us controlling. Among these are Hailes v. Van Wormer, 87 U. S. (20 Wall.) 368, 22 L. Ed. 241, where the doctrine is stated as follows:

"It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention. No one by bringing together several old devices without producing a new and useful result, the joint prod-

uct of the elements of the combination and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others, in combination."

Again, in Reckendorfer v. Faber, 92 U. S. 357, 23 L. Ed. 719, it is said:

"The combination, to be patentable, must produce a different force or effect, or result in the combined forces or processes, from that given by their separate parts. There must be a new result produced by their union; if not so, it is only an aggregation of separate elements."

And the same doctrine is clearly and forcibly stated in Pickering v. McCullough, 104 U. S. 318, 26 L. Ed. 749, in the following language:

"In a patentable combination of old elements, all the constituents must so enter into it as that each qualifies every other; to draw an illustration from another branch of the law, they must be joint tenants of the domain of the invention, seised each of every part, per my et per tout, and not mere tenants in common, with separate interests and estates. It must form either a new machine of a distinct character and function, or produce a result due to the joint and co-operating action of all the elements, and which is not the mere adding together of separate contributions. Otherwise it is only a mechanical juxtaposition, and not a vital union."

The earnestness with which appellant's claims are pressed in brief and oral argument has led us to give them the most careful consideration; but we are unable to find in the record before us any basis of fact which distinguishes this case, on any recognized or tangible principle, from the cases just cited and others of like import in which similar conclusions have been reached.

We are satisfied that the decision of the court below was correct, and the decree appealed from is therefore affirmed.