**HANN v. VENETIAN BLIND COR-
PORATION et al.**

**No. 880—RJ.**

District Court, S. D. California, C. D.

March 28, 1936.

Lyon & Lyon and Wm. D. Campbell, all of Los Angeles, Cal., for plaintiff.

J. Calvin Brown and Frank M. Gunter, both of Los Angeles, Cal., for defendants.

NETERER, District Judge.

The bill of complaint is founded upon a patent for a "Venetian blind bracket." Application was filed July 26, 1930. Patent granted October 27, 1931.

The Venetian blind is clothed in antiquity and is said to be the oldest form of blind for controlling admission of light and air into a room, credited by some to the Venetians of the Sixteenth century. The English dictionary makes reference to the Venetian blind in 1591. History notes that the French Embassy in 1746 was thus equipped. Thomas Jefferson's diary disclosed a surcharge to Venetian blinds.

Many patents (sixteen) have been introduced showing the prior art. The United States patents date from June 4, 1850, to September 10, 1929, inclusive; British patents (four), 1873 to 1908, inclusive.

In the main it may be said, as to the issue here, that these patents show a unitary bracket structure carrying a worm substantially on a vertical axis and with a worm wheel in mesh relation. The worm wheel acting as a shifting member to cause rotation of a tilt bar. The worm being fitted with a pulley in a bracket or sprocket around which sprocket a rope or chain is threaded and manipulated for tilting by pulling. The Gathmann patent has a knob outside the bracket.

The plaintiff's structure is composed of a bracket and carries a worm and its shaft, and a gear and its shaft, in a permanent unit. The worm gear is a shiftable member, and detachably connected to that shiftable member is a tilt bar. The tilt bar and the worm gear segment are interchangeably connected. The drawings show that the interengagement is by two pins carried on the tilt bar and engaging two holes on the segment. The patent also states that in place of using that structure which would produce a unitary rocking motion of the gear segment and the tilt bar, an angular member into which is placed a corresponding member on the tilt bar, to produce the same rotation, may be had.

The defense is lack of inventive merit; all claims being within the common knowledge of reasonable minds, or anticipated in the prior art. The basis for this defense is the patents introduced in evidence and the testimony of the inventor.

The natural outgrowth of an idea devised by head workmen or engineers by

spontaneous attempts in application of the principle involved is not patentable. Atlantic Works v. Brady, 107 U.S. 192-199, 2 S.Ct. 225, 27 L.Ed. 438.

■ Substantial invention increasing our knowledge in a forward step in a useful art is rewarded by the patent law. Shadows of an idea spontaneously occurring to any skilled mechanic or operator in the usual progress of manufacture is not invention. The inventor testified that the only problem confronting him was the use of a worm and a sector, particularly the lead on the worm. In response to a question, he said: "I wanted to see what would hold it tight, that is, what particular lead would hold. Otherwise I would not have known then as well as I know now that this is one of the simplest mechanical devices there is."

"Q. By this lead you refer to the pitch of the threads, is that right? A. Yes.

"Q. Then the only problem you had confronting you was to get the proper pitch of the thread? A. That is all.

"Q. Everything else was common? A. Sure.

"Redirect Question: Would you state that you only intended to carry out one experiment to determine the lead? At what time were you talking about, was it after you had figured this device out or before you had figured it out? A. While I had the worm gear device made up in a combination like that, it only took a little while to do it, and my next move was to find what would hold it in that place."

The prior art disclosed by patents (United States and British) that the combination gear device embodied in the defendant's patent is not new, but there is a degree in efficiency. The merit of plaintiff's patent appears to be in the "lead" on the worm or "pitch" of the threads, but no claim is made upon the "lead" or "pitch." The claims in the patent are a "substantially vertical axis."

Aside from the lack of novelty as being a spontaneous outgrowth of the idea devised by the engineer and not patentable, there is no means or mechanical device to which a mechanical device is put or claimed. Atlantic Works v. Brady, supra; Knapp v. Morss, 150 U.S. 221, 14 S.Ct. 81, 37 L.Ed. 1059. See, also, Wollensak v. Sargent, 151 U.S. 221, 14 S.Ct. 291, 38 L. Ed. 137. It is not a pioneer patent, nor has it an improvement and claim that substantially advanced the art as in Anna Hopkins

Angle v. Richardson (D.C.) 19 F.Supp. 1002 (Judge McCormick). See, also, Curt. Patents (4th Ed.) § 310. The claims here are not within Eibel Process Company v. Minnesota & Ontario Paper Company, 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523, nor cases there cited.

The prior art disclosed in the Gathmann 122,595; Osborne 683,221; Burke 1,492,420; Eales (British) 18,388/1908; Vetterlein 1,-743,696; Sapper 1,271,619, shows that each of these patents has a worm and sector relation or engagement. That the worm on the Gathmann device was horizontal instead of vertical is unimportant. Knapp v. Morss, supra. This principle is adopted by Anderson. Anderson has developed no new principle, nor has he shown new construction, in his patent or in the specifications or claims made.

Complainant asserts that the prior art was duly considered by the Patent Office in granting of the patent in issue, and presents Wilson-Sapper patent No. 1,327,363, Brundin patent No. 531,772, and Tripp patent No. 936,387. Smokador Mfg. Co. v. Tubular Products Co. (C.C.A.) 31 F.(2d) 255; Salt's Textile Mfg. Co. v. Tingue Mfg. Co. (D.C.) 227 F. 115; Imperial Bottle Cap & Machine Co. v. Crown Cork & Seal Co., 139 F. 312 (C.C.A.4). A glance at the Wilson-Sapper patent, in Figs. 2 to 8, inclusive, shows distinctive features and the specifications are more involved than in the Sapper patent No. 1,271,619, filed on May 1, 1918, the same date as Wilson-Sapper patent application, and not directed to the claim in the Anderson patent, nor to the claim now made at trial. The Sapper patent which does contain the principle of the Anderson claim now made was not considered by the Patent Office. See the Brundin patent, filed February 28, 1894, and the Tripp patent, supra, filed October 9, 1908, "curtain-roller"; these patents have many distinguishing features, and, without so deciding, may be said to specify principles and claims distinct from the Anderson patent. The Gathmann, Osborne, Burke, Eales, Vetterlein, and Sapper, supra, were not considered by the Patent Office in passing on plaintiff's application, and overcome the presumption of the patent's validity, Mettler v. Peabody Engineering Corporation, 77 F.(2d) 56 (C.C.A.9); Warren E. Collins et al. v. John H. Emerson, 25 U.S.P.Q. 317. See, also, Boynton v. Chicago Hardware F. Co., 26 U.S.P.Q. 30.

The Dunn application was filed February 26, 1930, and patent No. 1,807,061 issued May 26, 1931. The application for the patent in suit was filed on July 26, 1930. The date of the invention, on absence of evidence to the contrary, is presumed to be that on which the application was filed in the Patent Office, and where the date is carried back beyond the application, proof must be persuasive to a certainty, beyond a reasonable doubt. Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651.

"The burden is the same as the proof necessary to establish a prior use." United Shoe Machinery Corporation v. Brooklyn Wood Heel Corporation (C.C.A.) 77 F. (2d) 263, 264.

The proof that claimant inventor made his discovery prior to the application is not persuasive. Dunn's patent fastens the segment as shown in Plaintiff's Exhibit 2 to the bracket of the said segment and holds the worm to the bracket so that the teeth are all in mesh, as contended for plaintiff.

Dunn "Distributor of hardware for Venetian blinds and other supplies for Venetian blinds" has been identified with the Venetian blind business for "apparently twenty-two years," as sales manager. He "had general knowledge of all the devices * * * used * * * making Venetian blinds." He helped to develop two or three friction tilting devices for his company. The friction devices he described as "a bracket that extends downward from the header, or outward from the jamb of the window with a hole through it, or a slip in it, between which two of these brackets of the tilting-bar fitted and a screw inserted into each end of the tilting-bar and turned up sufficient to exert a pressure on a friction washer between the wood end of the bar and the metal bracket that held it in place."

Dunn says difficulty was encountered in the operation of the friction type of tilting device. "The blind wouldn't stay put." This was "a major problem in the manufacture and sale of such blinds"; he and his employer "were constantly experimenting" from 1915 to 1937. They used the half-segment in the sprocket, or a gear with teeth in it, the circular portion of which extended downward from the tilting bar and the bracket in which the tilting bar fitted on the tilting end at the rejection at the bottom, and the circular gear or sprocket would drop into a pin that projected out to hold the blind in place, and the weight of the blind resting upon that pin in tilting would raise the bar out of the pin and tilt it to the desired angle and release the cord, and the blind would drop back down to the proper place. "The segment with teeth was attached to the tilting-bar" to hold the blind in position.

It is obvious to me from the testimony of Dunn and Anderson, and the letter written by Dunn to Anderson for the development of a die and his direction as to the desired end, that the suggestion of Dunn led to the vital specifications set out in the Anderson patent and claims made therein. This conclusion is based upon the manner of the testimony of these witnesses while upon the stand, and suggestions in relation to the model sent to Anderson, and likewise the failure to produce the model or disclosure with relation to the activities inspired by the letter, and failure to file his application until July 26, 1930; and applying the familiar rule that when there is material testimony to establish a fact in issue in the present ability of the litigant to present and fails to do so, or offers a reasonable excuse for such failure, the presumption follows that the testimony, if presented, would be against such party. Mammoth Oil Company v. United States, 275 U.S. 13, 48 S.Ct. 1, 72 L.Ed. 137.

That a statement was made to the defendants William E. Shehan and Godfrey Bell of any claims or contentions with relation to the Anderson patent is not established; and that they knew nothing about the Anderson patent until the receipt of the letter from counsel for plaintiff, is shown.

The emphasis placed on commercial success, citing Temco Electric Motor Company v. Apco Mfg. Co., 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298, and Bankers' Utilities Co. v. Pacific Nat. Bank (C.C.A.) 18 F.(2d) 16–18, have no application on the facts and are disposed of by the following from the Circuit Court of Appeals of the Seventh Circuit, in Republic Rubber Co. v. G. & J. Tire Co., 212 F. 170, 172: "In the record before us the new thing is said to be the testimony which bears upon the high degree of usefulness of the Mell tire and also the great commercial success that has been achieved in its manufacture and sale. Matters of this kind can only be used to resolve a doubt in favor of the patentee, when the court has been left in doubt after a full consideration of the nature and scope

**916**

of the patent and a comparison thereof with the teachings and structures of the prior art. Utility of a device and commercial success in exploiting it cannot be used to resolve the doubt as well as to create it, else every useful and successful thing would be patentable."

See, also, Jackson Skirt & Novelty Co. v. Rosenbaum et al. (C.C.A.) 225 F. 531; Boston Pencil Pointer Co. v. Automatic Pencil Sharpener Co. (C.C.A.) 276 F. 910.

Decree will be directed for the defendants.