## Aron *v.* Manhattan Ry. Co.[1]

### (*Circuit Court, S. D. New York.* January 26, 1886.)

1. PATENTS FOR INVENTIONS—NOVELTY—GATE-OPERATING DEVICE.
   A device for opening and closing the gates of railway cars, consisting of a link connecting a sliding rod with the gate, and a rod sliding in or on bearings secured to the guard-rail, and having a handle located within convenient reach of the attendant, does not possess patentable novelty.

2. SAME—JUDICIAL NOTICE OF MECHANICAL DEVICES.
   Judges will take judicial notice of mechanical devices of common knowledge.

3. SAME—PATENTABILITY RESTS ON MEANS FOR CARRYING OUT A CONCEPTION.
   Although the patentee was the first to conceive of the convenience and utility of a mechanism for opening and closing the gates of railway-car platforms, his right to a patent must rest upon the novelty of the means he contrived to carry his ideas into practical application.

4. SAME—INVENTION—MECHANICAL SKILL.
   It rarely happens that old instrumentalities are so perfectly adapted for a use for which they were not originally intended as not to require any alteration or modification for such use. But if the changes involve only the exercise of mechanical skill, they do not sanction a patent.

5. SAME—DUPLICATION.
   The mere duplication of a device for operating a gate for the platforms of railway cars, whereby the gates of two adjoining platforms may be operated simultaneously, does not require invention.

6. SAME—PATENT No. 288,494, OF NOVEMBER 13, 1883—RAILWAY-CAR GATES.
   The first five claims of this patent are void of want of patentable novelty.

In Equity.

*Munson & Philipp,* for complainant.

*Edwin H. Brown,* for defendant.

WALLACE, J. This suit is brought to restrain infringement of letters patent No. 288,494, granted November 13, 1883, to William W. Rosenfield, assignor. The patent relates to gates of cars in which the passengers get on and off at the sides of the platform, the gates being arranged to close the side entrances to the car platform except when the passengers are getting on and off. Such cars are in use upon the elevated railways in the city of New York. The patent describes two improvements in these gates, only one of which is involved in this controversy. This consists in operating mechanism by which the guard or attendant upon the platform of the car, while standing out of the way of incoming or outgoing passengers, and in the passage-way between two cars, can simultaneously open and close the gates of both cars. The only question litigated is whether there was any patentable novelty in this improvement.

In the general preliminary statement of the object of the invention the patentee states in his specification that—

"In many classes of railway cars, and particularly in those used upon the elevated and other city railways, it has been found necessary, in order to prevent passengers from falling from the train, and also to prevent persons

[1] Reported by Charles C. Linthicum, Esq., of the Chicago bar.

from attempting to get off or on the car while in motion, to provide the entrances on the car platform with gates by which they can be closed except at the proper time. As there is usually but one guard or attendant stationed between two adjoining cars, it follows that, to open or close both gates, he must pass around from one to the other of the adjoining platforms. It is the object of the present invention, among other things, to provide means by which the guard or attendant can, without changing his position, open or close both gates simultaneously, and with the least possible delay. To that end, one feature of the invention consists in providing the gates with connections so arranged that any two adjoining gates can be simultaneously opened or closed by the guard while standing in the passage-way leading from one of the cars to the other."

In the detailed description illustrated by the drawing, the platforms are arranged so that the entrances to them from the station are at the side, and are provided with the usual guard-rails, which extend across the ends except a space at the middle, which is left open to afford a passage-way from one car to the other. The side entrances to the platform are closed by gates, which are hinged to posts at the outer ends of the guard-rails, and are arranged to swing inward against the rails in opening. The devices for operating the gates are a link connecting a sliding rod with the gate, and a rod which slides in or on bearings secured to the guard-rail, with a handle which is located near the passage-way. When the platforms of two cars adjoin each other, the handles can be simultaneously grasped by the guard standing in the passage-way, one with each hand. Two arrangements of these co-operating connections are suggested in the description, and are shown in the drawing. In one, the sliding rods extend along the outside of the guard-rails, and are connected by the links to levers or arms which extend outward from the gates; the opening of the gates being effected by pushing the sliding rod. In the other, the sliding rods extend along the inside of the guard-rails, and are connected by the links directly to the gates, the opening being effected by pulling upon the sliding rod. The patentee states that the sliding rods will preferably be provided with some form of locking mechanism by which the gates can be fastened in the open or closed condition.

The claims of the patent are six in number, five of which only are in controversy, and they are as follows:

"(1) The combination, with a gate arranged to close the side entrance to a car platform, of an operating handle located at or near the inner end of the platform guard-rail, and means connecting said gate and handle, whereby the attendant may open and close the gate while standing at the end of said guard-rail, substantially as described. (2) The combination, with gates arranged to close the side entrances to the adjoining platforms of two cars, of operating handles located at or near the inner ends of the platform guard-rails, and means connecting said gates and handles, whereby the attendant may open or close both gates simultaneously while standing at the ends of said guard-rails, substantially as described. (3) The combination, with a railway car and its platform, having an end guard-rail, by which a side entrance thereto is provided, of a gate for closing said entrance, a rod, as *f*, sliding in or on guides secured to said guard-rail, and a link, as *e*, connected to said gate and rod, all substantially as described. (4) The combination, with a

railway car and its platform, having an end guard-rail, by which a side entrance thereto is provided, of a swinging gate for closing said entrance, a rod, as *f*, sliding in or on a guide secured to said rail, a link, as *e*, connected to said gate and rod, and means for locking said gate in its closed position, all substantially as described. (5) The combination, with gates arranged to close the side entrances to the adjoining platforms of two cars, of rods, as *f*, sliding in or on guides secured to the guard-rails of said platforms, and links, as *e*, connected to said gates and rods, substantially as described."

A brief reference to the prior state of the art will indicate that the combinations referred to in the several claims are merely an application to a new situation of old devices which had previously been applied to analogous uses. Devices to open and close an aperture at a distance from the operator in a great variety of forms was old. As illustrations of those things which are matters of common knowledge, and of which the court will take judicial notice, it is sufficient to allude to the strap used by the driver at the front of an omnibus to open and close the rear door; to the devices for opening or closing valves at a distance, in steam and hydraulic apparatus; and to the devices used at railway switches for opening and closing the rails.

Referring to the prior state of the art, as shown by various prior patents which have been introduced in evidence, it appears also that mechanism to open and close the entrance to passenger cars at a point distant from the operator was likewise old; as, where the operator, standing upon the front platform, employed such mechanism to open or close a door at the rear platform. One prior patent alone, the one granted to John Stephenson, September 15, 1874, shows five methods of closing and opening the rear doors of street cars from the front platform. Mechanism for closing and opening apertures at a distance from the operator, in which the same devices were employed as are employed by the patentee, was old, and is disclosed in a number of earlier patents which have been put in evidence, It will suffice to refer to two only. The patent to Woolensak, of March 11, 1873, for an improvement in transom lifters, describes the means for opening and closing the transom as consisting of a sliding rod, which is connected by a pivoted link to the arm of the transom frame. The patent to Carrigan, granted April 16, 1878, for an improvement in blind adjusters, whereby outside blinds are opened and closed without lifting the window sash, describes as the mechanism employed a sliding bar connected by a pivoted link with a hinged shutter. In both of these patents, the aperture, to be opened and closed at a distance from the operator,—in the one case a shutter, and in another a transom,—is opened and closed, as is the case in the patent in suit, by pushing or pulling the sliding rod or bar. In both of these patents there is likewise described a locking device, by means of which the sliding rod or bar is retained in a fixed position, so that the shutter or the transom will remain fastened when opened or closed, at the option of the operator; thus showing opening, closing, and locking apparatus in all essentials like that of the patent in suit.

Moreover, the patent to Carrigan shows this apparatus arranged to open and close the two shutters of the window, at the option of the operator, simultaneously; the sliding bars being so arranged as to be pushed or pulled each by one hand of the operator. Mechanism for opening and closing apertures distant from the operator, in which the devices used for the purpose are the mechanical equivalents of those employed by the patentee, is shown to be old by a large number of patents which have been put in evidence.

This partial exhibit of the prior state of the art demonstrates that what the patentee did was to adapt well-known devices to the special purpose to which he contemplated their application. It was necessary that the gate should swing inward to open and outward to close; that the sliding rod should be located where it would be out of the way of passengers entering or leaving the platform; and that the end or handle of the rod should be located where it could be conviently operated by the attendant, without inconveniencing outgoing or incoming passengers. The new situation required adequate modifications of existing devices for opening and closing an aperture at a distance from the operator, appropriate to the new occasion. Accordingly, the patentee located the rods on bearings secured to the guard-rails, with their handles near the passage-way formed by the space or opening near the middle of the guard-rail. If this required invention, his improvement was the proper subject of a patent. He did nothing more and nothing less than this. It seems impossible to doubt that any competent mechanic, familiar with devices well known in the state of the art, could have done this readily and successfully upon the mere suggestion of the purpose which it was desirable to effect. When it was done as to one car platform, it was only requisite to duplicate it upon another to make the improvement of the patentee in all its length and breadth.

The patentee is entitled to the merit of being the first to conceive of the convenience and utility of a gate opening and closing mechanism which could be operated efficiently by an attendant in the new situation. His right to a patent, however, must rest upon the novelty of the means he contrives to carry his idea into practical application. It rarely happens that old instrumentalities are so perfectly adapted for a use for which they were not originally intended as not to require any alteration or modification. If these changes involve only the exercise of ordinary mechanical skill, they do not sanction the patent; and, in most of the adjudged cases where it has been held that the application of old devices to a new use was not patentable, there were changes of form, proportion, or organization of this character which were necessary to accommodate them to the new occasion. The present case falls within this category. The bill is therefore dismissed.