### PLUMB v. NEW YORK, N. H. & H. R. CO. et al.

(Circuit Court, D. Connecticut. October 31, 1899.)

### No. 945.

PATENTS—PATENTABLE NOVELTY—AIR-BRAKE ATTACHMENT.

The McKenna patent, No. 348,289, for an air-brake attachment which consists of a short flexible tube with a coupling on one end by which it is attached to the train pipe of an ordinary air brake at one end of the car, and a stopcock at the other end, which is carried up so as to be conveniently reached by a brakeman on the platform, and by means of which he can vent the air from the train pipe, shows a device which is merely the result of mechanical skill, and the patent is void by reason of lack of patentable novelty in view of the prior art.

This was a suit in equity by Duncan C. Plumb against the New York, New Haven & Hartford Railroad Company and Charles P. Clark, president, for infringement of a patent.

Seward Davis, Frederick P. Fish, and Charles A. Brown & Cragg, for complainant.

Robert J. Fisher, for defendants.

TOWNSEND, District Judge. Final hearing on bill and answer raising question of validity of patent No. 348,289, granted August 31, 1886, to complainant's assignor, Edward W. McKenna, for an air-brake attachment known as "back-up hose," infringed by defendant. The patent is for a device to be used in connection with air brakes on railway trains. The old straight air brakes were applied by the direct pressure of air from the locomotive. In the later automatic brake system the brakes were applied by exhausting the air pressure. This device is intended to be used in connection with the automatic system. The object of the alleged invention was to provide a portable device adapted to be detachably attached to the train pipe at the end of any car, and to be operated by a brakeman to put on the brakes. The device itself consists of a flexible tube with a one-half coupling at one end and a stopcock at the other

end. Its construction is practically identical with that of the ordinary garden hose. Counsel for complainant contend, however, that for several years after the invention of the automatic brake a problem was presented of providing an effective contrivance for controlling a train which could be practically and conveniently operated from the platform of the car, and attached to any car without any extra mechanism, and without any interference with the operation of the air-brake system, and that this patentee was the first to solve the problem; that his solution involved invention, and that greater safety to employés has been secured thereby. The claims are as follows:

"(1) The combination of a railway car, an air brake and its pipes, and a flexible removable pipe or tube, D, connected to the brake pipes at its lower end, its upper end extending to above the platform of the car, and provided with a cock, substantially as and for the purposes set forth. (2) The combination of a car, an air brake, its pipe, C, a flexible portion, $C^1$, thereon having the usual half coupling, c, a separate tube or pipe, D, having a half coupling, d, upon one end, adapted to be coupled to the half coupling, c, and a stopcock, $c^1$, at the upper end; said device being thus adapted to be coupled to the end of said brake pipe or tube, and to be carried up alongside the hand rail to a convenient position to be used, substantially as set forth."

Long prior to this alleged invention, cars had been equipped with the "conductor's valve," usually placed in the water-closet of the coach, and having a cord attached to its handle, which passed through the interior of the car, so that the conductor or trainman could reach and operate it from any position within the car, and in some instances from the doorway opening onto the platform. So, also, long prior to said alleged invention, cocks were attached under the platform at each end of each car to the train pipe. A man, by lying down on the platform, or standing on its step, could operate these train pipe or angle cocks, and vent the pipe, in exactly the same way, and with exactly the same results, as by the operation of the conductor's valve or of the patented device. Each of these old devices is still in use. The patented device is simply a short extension of the train pipe, with a cock on the end. Another device, known as the "Richmond tail hose," was admittedly used, long prior to the alleged invention, on the Richmond, Fredericksburg & Potomac Railroad. Its construction was identical with that claimed in the patent,—a removable short piece of hose, with a cock on one end and a coupler on the other,—except that it had double, or male and female, couplings, so as to fit either coupling on the car to which it was to be attached. It was operated in the same way, by a man standing on the platform, and with the same result, namely, to vent the train pipe. The only material difference between this coupler and that of the patent in suit was that, being attached to the old straight air brake, the venting of the pipe released, instead of applying, the brakes. The breaking of the train pipe, the bursting of the hose between the cars, the opening of the angle cock or of the conductor's cock, would do just as effectively what this device does, namely, vent the train pipe and apply the brakes.

In these circumstances, the question presented is whether it involved invention to detachably couple on to the train pipe a piece of

hose to serve as an additional vent. The prior art already showed two such permanent valves for this identical purpose in automatic brakes, and one identical removable valve device in straight air brakes. Even if none of these prior devices anticipate, yet they must be reckoned with in considering the problem presented. Although the patented device is more convenient than the conductor's or train-pipe valve, yet there was no novelty in the means contrived. The idea of greater convenience by means of a detachable attachment was shown in the Richmond tail hose. Its use in the old operation of venting the hose for the analogous purpose of releasing instead of applying the brakes is strikingly like the analogous uses in Pennsylvania R. Co. v. Locomotive Engine Safety-Truck Co., 110 U. S. 490, 4 Sup. Ct. 220, and Harwood v. Railroad Co., 11 H. L. Cas. 666. In Aron v. Railway Co. (C. C.) 26 Fed. 314; Id., 132 U. S. 85, 10 Sup. Ct. 24,—where the patent in suit covered a connection for opening two gates simultaneously, which had hitherto been separately operated,—Judge Wallace said:

"The patentee is entitled to the merit of being the first to conceive of the convenience and utility of a gate opening and closing mechanism which could be operated efficiently by an attendant in the new situation. His right to a patent, however, must rest upon the novelty of the means he contrives to carry his idea into practical operation."

If this McKenna device had been first in use, and some one had devised the conductor's or train-pipe or Richmond valve, it cannot be doubted that they would have been held to be infringements. Peters v. Manufacturing Co., 129 U. S. 537, 9 Sup. Ct. 389; Knapp v. Morss, 150 U. S. 231, 14 Sup. Ct. 81.

Counsel for complainant further say: "How slight a change from what is shown in the prior art will constitute a patentable invention, when, as in the case at bar, there is secured a new and useful result, is shown by the following citations." They then cite the inventions of the Bell telephone and Edison lamp, and discuss, with illustrations, Krementz v. S. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719; Magowan v. Packing Co., 141 U. S. 332, 12 Sup. Ct. 71; Topliff v. Topliff, 145 U. S. 161, 12 Sup. Ct. 825; Gindorff v. Deering (C. C.) 81 Fed. 952. It is unnecessary to differentiate such pioneer inventions as the telephone or electric lamp from this mere mechanical extension of the train pipe. In Krementz v. S. Cottle Co., which is the strongest case in support of complainant's contention, the court below had found that "Krementz was the first to make a stud from a single continuous piece of metal, in which the head was hollow, and round in shape"; and the supreme court held that said novel construction was not obvious to any skilled mechanic, because the president of defendant company, skilled as he was in the art, and applying for a patent for a collar button, "failed to see what Krementz afterwards saw,— that a button might be made of one continuous sheet of metal, wholly dispensing with solder, of an improved shape, of increased strength, and requiring less material." These advantages were the direct results of said novel construction. The advantages claimed for the patent in suit are not the result of any novel construction. The citation and illustrations from Magowan v. Packing Co., 141 U. S. 332,

12 Sup. Ct. 71, show that the patent in suit was expressly stated to be for an improvement on McBurney, which consisted in "the combination with the McBurney packing of a vulcanized rubber backing of pure gum." The McBurney "furnishes the wearing surface," the patented "pure rubber furnishes an elastic backing," and "by this combination a new article results, namely, one which presents always the same character of surface under wear, and one which has sufficient elasticity to make a light joint." The new packing had a new collective mode of operation, in that its construction combined the advantages of the old packing and the resiliency of the India rubber, and by means of such construction it produced a new result. In Gindorff v. Deering, supra, the novelty of the patented device was not denied, and the defendants had tried to acquire it, and the need of some such device had been long felt and recognized. Although a similar claim of long-felt want is set up in this case, I think, in view of the existing devices, that it has not been satisfactorily proved. In the barbed-wire case the barb was new in material, in shape, and in combination, and these new means caused the new result; and in Topliff v. Topliff, supra, the court pointed out various differences of construction, and said:

"If this patent differed from the other merely in duplicating the rod, and applying it to the front bolster as well as to the rear axle, it is conceded that it would not, under the cases of Dunbar v. Myers, 94 U. S. 187, and Slawson v. Railroad Co., 107 U. S. 653, 2 Sup. Ct. 663, involve invention."

This case, therefore, is not like those above cited by complainant, nor like National Cash-Register Co. v. Boston Cash Indicator & Recorder Co., 156 U. S. 514, 15 Sup. Ct. 434, where the problem was perceived, and a solution furnished by the conception of a new idea of means and of a new device to put such means in operation. It is rather like Aron v. Railroad Co., supra, and like Wollensak v. Sargent, 151 U. S. 221, 14 Sup. Ct. 291, where it was held that there was no invention in a vertical rod device for opening and closing a transom, inasmuch as a previous patent showed a horizontal device applied for a similar purpose; or like Blake v. City and County of San Francisco, 113 U. S. 679, 5 Sup. Ct. 692, where an old automatic valve was applied to a steam engine. In that case the prior art showed only a hand-operated valve to relieve the pressure on fire hose. To obviate its defects, the inventor applied an automatic valve between the engine and pump, which discharged the stream, and relieved the pressure. The court found that, prior to the patent, similar automatic valves had been used to reduce the pressure of steam or water in steam pipes and cylinders. The court then said:

"It follows from this principle that, where the public has acquired in any way the right to use a machine or device for a particular purpose, it has the right to use it for all the like purposes to which it can be applied, and no one can take out a patent to cover the application of the device to a similar purpose. If there is any qualification of this rule, it is that, if a new and different result is obtained by a new application of an invention, such new application may be patented as an improvement on the original invention; but, if the result claimed as new is the same in character as the original result, it will not be deemed a new result for this purpose. For instance, an automatic relief valve, used to relieve the pressure of steam, produces no new result in char-

acter when used to relieve the pressure of water, unless some further effect besides the mere relief of pressure is obtained."

Even if the apparatus itself may be said to be safer and more convenient, it is merely because the brakeman will be more likely to use it because it is less trouble for him to reach it when it is on the platform than when it is under the platform or inside the car. These advantages are only the secondary objects attained by the direct mechanical result of the combination of the ordinary garden-hose coupler with the ordinary train pipe. They are not the result of any additional function due to the patented construction. The device itself has no new mechanical relation by reason of being an extension of the train-pipe valve, or a conductor's valve with location changed from the water-closet at the end of the car to the outside platform. "It is for the discovery or invention of some practicable method or means of producing a beneficial result or effect that a patent is granted, and not for the result or effect itself." Corning v. Burden, 15 How. 252; Westinghouse v. Power-Brake Co., 170 U. S. 537, 555, 18 Sup. Ct. 707.

A mass of evidence has been introduced as to prior uses of the alleged invention in Quincy, Chicago, and Cincinnati. They will not be discussed in detail. If, as claimed by complainant, they fall far short of the requirements of law to support this defense, they at least furnish persuasive evidence of the ways in which suggestions of how to make such a convenient device would naturally be presented to the ordinary mechanic. It may further be added that the alleged inventor saw his device used by others for nearly a year and a half before he applied for a patent, and, after the patent was issued, although he knew of various infringements, he never took any measures to warn infringers, or to assert any rights in said patent. No claim was made thereunder until after its sale to the present complainant, some 10 years after its issue. Apart from all other considerations, however, the device is merely the result of mechanical skill, and the patent is invalid by reason of lack of patentable novelty in view of the prior art.

The conclusions reached dispense with the necessity of considering the further contentions founded on the file wrapper of the patent in suit. Let the bill be dismissed.