## O'ROURKE ENGINEERING CONST. CO. v. McMULLEN et al.

### (Circuit Court, S. D. New York. February 6, 1907.)

**1. PATENTS—IMPLIED LICENSE TO USE PATENTED ARTICLE.**

Where a company is licensed by one patentee to make and sell a patented article, and the president of the company, owning another patent for a device used in and as a part of the same patented article, sells a large number of such articles made under and in accordance with such patents, with the statement that the company is duly licensed, there is an actual license as to the one patent and an implied license as to the other which will protect the users from the charge of infringement of either.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 301, 302.]

**2. SALE—SUIT FOR INFRINGEMENT—PROOF OF LICENSE.**

Where large numbers of an article containing a patented device are made and sold under circumstances which carry an implied license from the patentee to use the same, in a suit by a subsequent owner of the patent for infringement against a user of one of such articles which has been long in use, the defendant cannot be required to prove beyond a reasonable doubt that the article owned and used by him is one of those covered by the implied license.

**3. SAME—INFRINGEMENT—REPAIR OR RECONSTRUCTION.**

The replacing by a purchaser and user of a patented article of a part which is peculiarly subject to wear or destruction, and which does not constitute a chief element of the patented invention, is within his rights as a repair, and cannot be considered a reconstruction to subject him to liability as an infringer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 399.]

**4. SAME—AIR LOCK FOR CAISSONS.**

The Moran patent, No. 500,149, for an air lock for use in work carried on under air pressure greater than that of the atmosphere, construed, and claim 2 *held* not infringed by a structure in which no stuffing box is attached to the rope fall which carries the load being hoisted out from the caisson through the air lock, nor any equivalent therefor. Claim 3 *held* void for lack of invention.

**5. SAME.**

The Barr patent, No. 514,843, for an air lock for caissons, *held* void for lack of invention as to claims 1, 3, 4, 6, and 8.

Suit in equity to restrain infringement of claims 2 and 3 of United States letters patent to Daniel E. Moran, dated June 27, 1903, No. 500,149, and infringement of claims 1, 3, 4, 6, and 8 of United States letters patent No. 514,843, to William C. Barr, dated February 13, 1894.

Walter D. Edmonds, for complainant.

Gifford & Bull (J. Edgar Bull, of counsel), for defendants.

RAY, District Judge. The defendants Deeves, who are building contractors, as such are engaged in erecting an extension to the Manhattan Life Building in the city of New York, and they employed the defendant McMullen to lay the foundations of such extension, which are set on caissons. In doing the work the use of air locks, one or more, was necessary, and complainants, who now own the patents in suit and all rights of action for the infringement thereof, allege that the air locks used by McMullen infringe same. The defendants deny

infringement, and allege that in so far as McMullen has used any air lock at any time or place mentioned or referred to in the bill of complaint, which otherwise would constitute an infringement, he, or the lock, was duly licensed; and that, if the court is to consider and determine acts of alleged infringement growing out of the use of two air locks purchased by McMullen from the Cockburn Company in 1901, and used outside the state of New York, and which are claimed to infringe, they do not infringe and are not shown to infringe, for the reasons, first, they are not sufficiently described; second, that in the Moran patent claims 2 and 3 are limited to a packing carried on a rope, and are invalid if not so limited, and show novel features not used by defendant McMullen. Defendants say, as to the Barr patent, that claim 1 required that both the upper and lower gates be operated by air pressure, which McMullen does not do; and that claims 3, 4, 6, and 8 are in substance for a principle and do not involve patentable subject-matter, and that, therefore, there is no infringement.

The bill of complaint alleges infringement by defendants in the city of New York only. It does not purport to charge infringement elsewhere. This is the language of the bill in so far as it attempts to charge infringement, viz.:

"And your orator further shows unto your honors, on information and belief, that the said Arthur McMullen was hired and employed by the said Richard Deeves and John H. Deeves and Richard Deeves & Son, a corporation, to make, use, and operate air locks and caissons made in accordance with the inventions set forth and claimed in each of the said several letters patent, and that the said defendants have conspired and confederated together to injure your orator, and to deprive it of the benefits and advantages which might and otherwise would accrue to it from the said inventions. Yet the said defendants, well knowing the premises and the rights secured to your orator as aforesaid, but contriving to injure your orator and to deprive it of the benefits and advantages which might and otherwise would accrue to it from said several inventions, after the issuing of each of said several letters patent, and the assignment to your orator of the said letters patent to Moran, Barr, and O'Rourke, as aforesaid, and before the commencement of this suit, but how long before your orator does not know, did, as your orator is informed and believes, without the license or allowance, and against the will of your orator, and in violation of your orator's rights, and in infringement of the aforesaid several letters patent, at New York City, in the Southern district of New York, unlawfully and wrongfully, and in defiance of the rights of your orator, make, construct, use, and hire, or vend to others to be used, the said inventions of each of said several letters patent, and did make, construct, use, and hire, or vend to others to be used, air locks and caissons, each made according to, and employing and containing the said several inventions, and are now engaged in making air locks and caissons according to and containing conjointly, the said several inventions of each of said letters patent No. 500,149, No. 514,843, and No. 631,-320. And your orator charges it to be a fact that said defendants and their confederates still continue so to do, and that they are threatening to make the aforesaid air locks and caissons in large quantities and to supply the market therewith, and to sell the same, all in defiance of the rights acquired by and secured to your orator, as aforesaid, and to your orator's great and irreparable loss and injury, and by which your orator has been and still is being deprived of great gains and profits which it might and otherwise would have obtained but which have been received and enjoyed, and are being received and enjoyed, by the said defendants by and through their aforesaid unlawful acts and doings, to the great and irreparable damage of your orator in the sum, as your orator believes, of $100,000. And your orator further shows unto your honors that the conjoint use of the said several inventions by the said defendants, and their preparation for and avowed determination to continue the same, and

their other aforesaid unlawful acts, in disregard and defiance of the rights of your orator, have the effect to and do encourage and induce others to venture to infringe said several letters patent, in disregard of the rights of your orator."

There is no evidence showing or tending to show that the Deeves or any of them have ever hired, or employed or engaged McMullen, or any one, to make, use, or operate air locks and caissons made in accordance with the 'letters patent claimed to be infringed, or that they have conspired in that regard, or in any regard, to injure the complainant. There is no evidence that defendants or either of them have made or threatened to make, or are making or threatening to make, any such air locks or caissons. In making its prima facie case complainant produced proof of the use by defendants of two air locks in the city of New York in the erection of the said extension to the Manhattan Life Building, which it claims are infringements, and then rested. It made no attempt to prove any other infringement, or any use, sale, or making of an infringing air lock outside the city of New York as a part of its prima facie case. The defendants then produced witnesses to show that the machines used by them, or more properly by McMullen, in erecting the said extension, were licensed machines. By cross-examination of McMullen called by defendants to meet the complainants' prima facie case, and under objection, complainant sought to show that defendant McMullen had purchased in 1901 of Cockburn Barrow & Machine Company, and had used outside the city of New York and wholly outside the state of New York, two air locks which were infringements of complainants' patents and which were not licensed. As defendant refused to answer certain questions propounded by complainants' counsel, and which, if answered, tended to prove such facts, application was made to Circuit Judge E. Henry Lacombe for an order compelling an answer to such questions, and such order was made, and the answers show, with other evidence, that defendant did purchase in 1901 of said Cockburn Company two machines in all respects similar to the licensed machines, and that he had used same at different times and on different occasions at places outside the state of New York. It is evident that the order of Judge Lacombe could have been made on the theory that such proof followed by proof that such locks were used in the city of New York was perfectly competent to sustain the specific charge in the bill of complaint, and that it did not appear such proof could not or would not be made. The order could not have been made on the theory that, as the pleadings stood, proof of infringements by the purchase and use of infringing locks wholly outside of the city of New York was competent to sustain the plaintiffs' contentions and allegations. It is usual in pleadings to charge infringement by the commission of an act at a time and place designated "and elsewhere," or at other times and places, and under such an allegation proof of infringements at all times and places, unless limited by some order or stipulation or bill of particulars, prior to the commencement of the action at least, is admissible. Here the acts of infringement are laid in the city of New York, and the words "and elsewhere," or equivalent words, are wholly omitted from the bill of complaint. The answer of the defendants proceeds, however, on the theory that the bill of com-

plaint was broad in charging infringing acts elsewhere than in the city of New York, for it expressly says:

"These defendants deny that they have at any time * * * or at any time violated any of the alleged rights of said complainant or infringed the said several letters patent at New York City, or elsewhere, by making, constructing, using, and hiring or vending to others to be used, the said alleged inventions of each of said several letters patent," etc.

It seems to me probable that Judge Lacombe proceeded on the theory that the issue of infringement at places other than at the city of New York was fairly presented, and in view of that order and of the facts that the defendants were not surprised and could not have been misled or prejudiced, and the whole subject and all the transactions were thoroughly threshed out in the evidence, and have been fully considered on the final hearing and in the briefs, it seems to me that the omission in the bill of complaint should be disregarded or an amendment permitted, and that the case should be disposed of on the merits. If defendant McMullen had been deprived of the right to answer by giving full answering evidence, the case would be different; but as no harm has been or can be done, and equity does not favor either a multiplicity of actions or an unnecessary action, it seems to me the complainant should not be driven to another action, one against McMullen alone, to dispose of the questions involved in his purchase and use of such air locks, known as the "1901" locks.

We come, then, to the questions: (1) Were the locks used by the defendant McMullen on the Manhattan extension in the city of New York infringements of the patents in suit if not licensed? (2) Were they so far licensed that defendants were protected thereby in their use? And (3) were the 1901 so called locks infringements, and, if so, can their use by McMullen support this action? This necessarily involves the passing upon the question of the construction and validity of the claims in suit and the ascertaining what defendants did.

In 1893 or 1894 Cockburn Barrow & Machine Company sold to defendant McMullen two air locks of the Moran-Barr type, substantially like those used by him in doing the work for defendants Deeves on the extension to the Manhattan Life Building in New York City in 1902. Moran was paid his royalty of $500 each on these locks. In 1895 McMullen removed the two part lower gates of these locks, and used or utilized them in the construction of two other locks. After some trouble over this McMullen paid royalty to Moran on these locks, so that he then had, assuming he retained ownership, four licensed locks. It is contended by defendants that it was two of these licensed locks that were used on the Manhattan Life job in 1902, while complainants contend the fact that this was so is not sufficiently established. It is conceded that in about 1895 McMullen sold these four locks to John C. Rodgers, a general contractor, who used them in his business, and defendants claim that, being friendly with and more or less connected in business with McMullen, he loaned McMullen & Co. these locks in 1896 for work on the building of the Commercial Cable Company, and again in 1899 loaned them to the same firm for use in work on the Mutual Life Insurance Company's building; also, that in 1900 Rodgers sold them to the firm of Rodgers, McMullen & McBeam,

which firm used them in a job on the Harlem river, after which they were resold to Rodgers, and that in 1902 he again loaned them to Mc-Mullen for use on the Manhattan Life job in question here. While it is true that the Cockburn Company were making and selling other locks of the same type—Moran-Barr type—so that many of them were in use and it was therefore possible that the locks of McMullen, the history of which has been given, may have been confused · with or even interchanged with other locks of the same type, all were presumably licensed locks, except the two 1901 locks, purchased in that year, for the Cockburn Company was licensed by Moran at the times to which I now refer, and Barr, its president, was then the owner of the Barr patent, and the Moran-Barr type of locks were made in accordance with both patents. While there are more or less faults of memory and confusion in details of evidence, I think the oral and documentary evidence establishes the fact that the locks used by the defendants in the work on the Manhattan Life job were of the licensed locks, and were licensed by Moran, who received his royalty, and as when the two were first sold by the Cochran Company Barr was president of the company and was a party to their making and sale, and received full pay for same, neither the then nor the present owner of the Barr patent can be heard to contend they were not duly licensed. Barr when he sold the locks said the company was licensed to make and sell them. I think that under the circumstances of this case the burden was thrown on complainant to show these locks were not licensed. It would be intolerable where a company is licensed by one patentee to make and sell a patented article, and the president of the company, owning another patent for a device used in and as a part of the same patented article, sells a large number of such articles made under and in accordance with such patents to different persons, with a statement the company is duly licensed, to hold that there is not an implied license as to the one and an actual license as to the other. And it would be more unjust and intolerable to hold that where such articles are sold generally under such circumstances, and the ownership of the patents subsequently changes and their owner thereafter brings suit for alleged infringements, consisting in the use of such articles long in use, the burden is on the owner of such article to show beyond a doubt that it was duly licensed. In any event, this court will not hold that the defendant in such a suit—such being the facts—must prove beyond a reasonable doubt that the particular article or device was duly licensed. If the fact is shown to the satisfaction of the court by a fair preponderance of credible evidence, it ought to be sufficient; and with this court it is. I am satisfied and hold that the locks used by defendants on the Manhattan Life job and mentioned and described in complainants' prima facie case were licensed locks, and that all royalties were paid as to the Moran patent, and that there was an implied license and consent to their use by the then owner of the Barr patent; the president of the company making and selling them for a sufficient consideration growing out of his connection with the company making the sale and receiving the consideration. If in taking parts of these two originally sold to McMullen to make the other two and in the

construction of the other two the Barr patent was infringed, and these other two were the ones used on the Manhattan Life job, then there may be an infringement of the Barr patent. But, as stated, I think in this record it does not appear that there was, aside from the 1901 locks, an infringement of either patent, and the weight of evidence is there was not.

The complainant strenuously contends that the evidence is sufficient to show infringement of these patents in suit in the use by defendants of the locks of this type on the Manhattan Life job growing out of the fact claimed that the evidence shows changes which amount to reconstruction and which were not therefore repairs, even conceding the locks there used were originally duly licensed. It is contended that the upper doors or valves were replaced by the same company from which the locks were originally obtained and purchased. The evidence shows this, and also that the stuffing box was dispensed with, and a brass or metal bushing of some kind substituted, by placing this bushing lined with rubber in the hole in the doors or valves through which the rope carrying the load passes. But I do not think these things amounted to reconstruction. I think what was done amounted to no more than legitimate repairs. If the stuffing box, peculiarly subject to wear and destruction, wore out, the licensee had the right to replace it or to put something in place of it. If one of the double doors broke, he had the right to replace it, and if both broke or wore out he had the right to replace them. Neither the door nor the doors, or valves, nor the stuffing box, was the chief element of the patent, and both were subject to constant wear and were so constructed as to be specially subject to breakage, etc. To hold that the purchaser and owner of one of these locks must pay a royalty of $500 every time he broke or wore out a valve or a stuffing box, or lose his lock entirely, would be carrying the doctrine of reconstruction too far. I have carefully considered Morrin v. Robert White Engineering Works (C. C.) 138 Fed. 68, also Wagner T. Co. v. F. S. Webster Co. (C. C.) 144 Fed. 405, Thomson H. Electric Co. v. K. E. R. S. Co., 75 Fed. 1005, 22 C. C. A. 1, Goodyear Co. v. Jackson, 112 Fed. 146, 50 C. C. A. 159, 55 L. R. A. 692, and find nothing to change my views in this regard.

We come, then, to the consideration of the alleged infringement of the letters patent in suit by the purchase and use of the two locks known as the "1901" locks. The defendant McMullen admits their purchase and use by him, but not on the Manhattan Life job, and there is no evidence they were used there.

Claims 2 and 3 of letters patent No. 500,149, to Moran, dated November 19, 1892, read as follows:

"(2) The combination in an air lock of a two part valve with a rope opening at the center with a seat on the inner side of the air lock and the rope at the center against which the valve closes substantially as specified.

"(3) The combination in an air lock of a two part valve opening in the air lock, closing against a seat on the inner side of the air lock, a central opening in the valve and stuffing box to close the same substantially as specified."

The Moran patent tells what it relates to and its purpose as follows:

"This my invention relates to air-locks for use in work carried on under air pressure greater than that of the atmosphere, or what is known as the pneu-

matic method, and consists in the combination in an air-lock of a valve adapted to close around and open from a rope at or near the center of the valve while the rope is bearing a load, and the various combinations and modifications hereinafter specified and claimed. In the construction of tunnels, piers, and other underground or under water works, it is usual to connect the working chamber with the outer air by a tube or shaft having one end opening in the working chamber and the other end reaching to the outer air, through which access is had to and from the working chamber, tunnel heading or caisson. In order to give access to and from the working chamber an air-lock is provided consisting usually of two doors one on the inner and the other on the outer side of an air chamber, connecting pipes and valves being arranged to equalize the pressure in the air chamber with the working chamber or outer air in accordance with which one the lock is to be opened into. In the use of such devices it is necessary in passing material from the working chamber to the outer air to close the outer door, open the inner door and move the material into the air chamber or lock, and rest it there, close the inner door, equalize the pressure with the outer air and again move the material to the outer air. Where tackle is used in moving the material as is usually the case one tackle is used to bring the material in the air chamber or lock and a different tackle in moving it from the air chamber, making two handlings necessary in passing from the working chamber to the outer air. The purpose of this my invention is to move the material from or to the working chamber in one continuous journey without the necessity of handling it or changing tackle in the air chamber or lock or of having special appliances on the bucket or carriage."

It is substantially conceded that the locks used on the Manhattan Life job, if not duly licensed, were infringements of the Moran patent. I find no substantial dispute or question that the 1901 locks were like those in all respects, save that in place of a stuffing box to make or aid in making a close joint about the rope at the hole where it passes through the upper valves or doors, spoken of by McMullen as "the hoisting fall running through the upper doors," a bushing of brass or steel has been put in the hole to make a sufficiently tight joint for confining the compressed air in the air lock when the doors or valves into the caisson proper are open for the ingress or egress of material or persons; that is, open for persons or material to pass between the air lock and working space in the caisson. As the only evidence in the case shows the 1901 locks without this stuffing box arrangement, we must ascertain, it seems to me, what the essential elements of claims 2 and 3 of the Moran patent are, and whether or not, if the device there described is not used, McMullen, in using the 1901 locks with the bushings, is using a substantial equivalent. If the elements of claims 1 and 2 of the Moran patent are not necessary, and they are not used, or if either element is not necessary and not used in the 1901 patent, then there is no infringement. But, if such elements are used by the substitution of a well-known equivalent and the claims are valid, then infringement is established.

The elements of claim 2 of the Moran patent are (1) an air lock; (2) a two-part valve with, or having a rope opening at, the center of such two-part valve; (3) a seat on the inner side of the air lock and on the rope at the center against which the valve closes—all to be constructed in the manner pointed out in the specifications. This necessarily implies a something inside the air lock attached to and on the rope or cable (the rope or cable which carries the load), and I think this claim refers to the construction where the "stuffing box, T" is

used. This must not be confused with the packing boxes at the place where the shafts pass through the shell, or with the "stuffing box arranged about the hole N" (the hole in the two-part valve). These stuffing boxes are distinct from each other. The patent says:

"The valve, K, K', Fig. 2, has at its center an opening or hole, N, shown in Fig. 4, one half the opening or hole being in one part K and the other half in K'. The lips or flange, P, Fig. 7, on the edges of the parts, K, K', may follow around the opening, N. The opening, N, is made to conform to the rope or cable which is to pass through it. About the hole, N, I may arrange a stuffing box in two halves as shown in Figs. 4, 5, and 6, or flexible packing arranged in some other way, so as to make a close joint with the cable, such a device is shown in Fig. 8, where a circular groove is cut in the face of the hole, N, and in each portion of the grooves packing is secured, so that when the parts. K, K', are brought together [that is, when the two part valve is closed] there will be a continuous packing about the cable between it and the half valves K, K'."

All this the patentee says he may do, but he makes no claim for this packing or packing box device in, and attached to the valve as described, and which being in two parts is carried with the two parts of the valve, K, K', as it is raised and lowered or swung to or from the rope or cable. That is, no claim therefor is embraced within claim 2 in issue. Indeed, such a mode of packing a hole to make it tight about something passing through it was old as long ago as when our fathers tacked cloth (packing) in the bung hole of a cider barrel so the plug would fit tightly, and not only prevent the ingress of fresh air, but prevent the egress of the fermenting cider.

But the patent then continues:

"To make the joint about the cable more secure a stuffing box, T. Figs. 4 and 5, is placed on the cable and properly adjusted to make a close joint with it as shown in Figs. 4, 5, and 6. To the stuffing box is attached a thimble, U, preferably screwed into the stuffing box, but it may be formed as part of the stuffing box. The thimble has on the other end a projecting flange, 1. To the thimble is fitted a piece of hose or other packing, 2, and about the thimble and lying on the projecting flange, 1, is a gasket or packing, 3. The hose or packing, 2, may be omitted and the gasket used alone, or the gasket may be omitted and the hose used, but I have found it advantageous to use both. The valve, K, K', closes against the thimble and hose, 2, and makes a close joint with it and the gasket forms a seal about the hole, N, when the air pressure is turned in the chamber of the air-lock."

This "stuffing box" just described, and the only one shown in figures 4 and 5, is carried on the rope or cable when the valve, K, K', is open, and is then raised or lowered with it; but, as it is carried on the rope or cable and not attached to it, and as the rope or cable slips through it when the valve, K, K', is closed, the projecting flange, 1, of the thimble, U, on which is the packing, 3, forms a seat within or on the inner side of the air lock and on the rope or cable against which the valve, K, K', closes in the manner described. This combination in an air lock of (1) "a two-part valve with a rope opening at the center"; and, (2) "with a seat on the inner side of the air lock and the rope at the center;" (3) "against which the valve closes;" (4) "substantially as specified"—refers to the combination of the two-part valve, K, K', with the stuffing box, T, figures 4 and 5, carried on the rope or cable. It is true that later in the specifications (lines 105 to 115, page

3) this stuffing box is spoken of as "the packing box shown in Figs. 4 and 5," but, while this confuses, if careful attention is not given, there is no opportunity for misunderstanding, as figures 4 and 5 show the "stuffing box" carried on the rope or cable, and do not show any other "packing box," and the language at lines 105 to 115 shows plainly that the "stuffing box, T," carried with the rope, is referred to. The language is:

"It is manifest that when the packing box shown in Figs. 4 and 5 is used the flange on the thimble is pressed by the air pressure in the air-lock against the valve, K, K', and by means of the interposed gasket a close joint made. When the bucket is raised away from the air chamber the packing box remains on the cable near the hook and swings with it until the packing box is again brought to its position in the valve, K, K', where it is held during the descent of the cable through the air-lock to the shaft."

As the defendants do not use this stuffing box, T, arrangement at all, and it is not used in connection with the 1901 locks, I cannot find infringement of claim 1 of the Moran patent in any aspect of the case. The steel or brass bushing in the rope or valve hole or opening at the center of the two-part valve, K, K', and which bushing is used by defendant, may be the equivalent of the packing or stuffing box arrangement first referred to and described in the specifications as follows:

"About the hole, N, I may arrange a stuffing box in two halves as shown in Figs. 4, 5, and 6, or flexible packing arranged in some other way, so as to make a close joint with the cable, such device is shown in Fig. 8 where a circular groove is cut in the face of the edge of the hole, N, and in each portion of the groove packing is secured, so that when the parts, K, K', are brought together there will be a continuous packing about the cable between it and the half valves, K, K' "

—and which is in two parts and carried with the valves, and which is merely a mode of packing for which no claim is made in claim 2, but it is not the equivalent of the stuffing box, T, carried with the rope either in construction, operation, or function. This to my mind disposes of claim 2 of the Moran patent.

We come, then, to consider claim 3 of the Moran patent, its validity, and whether or not it is infringed if valid. This claim is for a combination in an air lock (1) the air lock; (2) a two-part valve, K, K', which opens in the air lock, and closes against a seat on the inner side of the air lock; hence (3) a seat on the inner side of the air lock; (4) a central opening in the valve, K, K', being the rope or cable opening; and (5) a stuffing box to close the rope or cable opening; all (6) substantially as described. Here a stuffing box is called for in express terms. And it is either the stuffing box arrangement in two parts attached to the doors or the stuffing box, T, carried on the rope. If the latter, the 1901 locks do not use it or its equivalent. If it refers to the stuffing box arrangement about the opening made in two halves and before described, it is not made an essential part of the patent or invention, and, in any event, it is not so described as to be definite or the subject of a valid claim. Two doors, or the two halves of a valve, each having midway its straight edge the half of a hole, or opening, come together on their straight edges and about this hole, thus forming a complete one, and attached to the doors and carried with it, one

half with each, is some sort of packing, so that the rope or cable passing through this hole will be pressed against sufficiently, it is expected or intended, to prevent the escape of compressed air from the air lock. Here, as already intimated, is neither invention nor patentable novelty. In place of this and conforming to the rope or cable the 1901 locks have a bushing of brass or steel to prevent wear and enlargement of the hole. This is the substitute if it may be called that. Clearly there is no patentable novelty or even novelty in the two-part valve. These are very old, and it is immaterial whether they open in the air lock or not, so far as invention or novelty is concerned, whether they are hinged and swing or slide. These forms are old. Nor is there anything new or novel in their closing against a seat, the seat described, on the inner side of the air lock. Clearly the hole or opening is not new or novel. Such a two-part valve with such an opening or hole and opening as described, and closing against a seat as described, presents nothing either new or novel, and the defendant does not infringe this claim when he uses all these things, and does not use in the combination a stuffing box or its equivalent. But assume a stuffing box, not new or novel in itself, and I see no novelty or patentable invention in the combination. In all essentials it is a pair of doors with a small hole therein at the point indicated for the passage of a rope or cable, which hole conforms in size and shape to the rope to be used. These doors open and shut when occasion demands, either by sliding or swinging, and, of course, open away from the rope. They open down or swing down, when open, into the air chamber of the lock, so that, when closed, the compressed air will press them up against their seat, and keep them closed and in close contact with the surrounding edges of the material forming the upper part of the air chamber, not necessary to describe. All this is to prevent the escape of compressed air when closed and at the same time have a two-part valve, double doors, which can be thrown wide open, when it is not desired to keep the air chamber closed, to permit unobstructed ingress to and egress from the air chamber and, when closed, close about the rope or cable hanging in the center of the air chamber and space above. This rope must not be interfered with. At the same time, when closed, these doors, or this two-part valve, must come in such close contact with the rope or cable that whether it moves up and down or remains stationary there will not be any material escape of compressed air. This, in claim 3, is provided for by flexible packing, any flexible packing attached to the edges of the rope or cable opening in two parts, one part on each door and carried with it, and, as matter of course, this packing will press close against the rope or cable at all times, and, if of the proper material, will substantially prevent the escape of compressed air both while the rope moves and when it is stationary. If properly attached to the two halves of the valve, the packing will not be detached and will serve its purpose until worn out. In my judgment it was not invention, in view of the prior art, to conceive the idea that stationary packing about a moving rope or cable passing through it would make a sufficiently tight joint to retain the compressed air in the air chamber. And there is nothing new or novel in the entire combination amounting to patentable invention, unless the application of the combination to a new

purpose in a new place amounts to or discloses patentable novelty. So far as this court is advised, this combination of old elements, described in claim 3 of the Moran patent, was never used until Moran applied it to air locks for the purpose described.

But we have many patents for hatchways and hatchway improvements with the two-part valve and cable or rope in the center, with notches and holes in the center of the valve, or doors for the movement of this rope carrying the load, without disturbing the valves, and we have all forms of devices for the opening and closing of these valves. In some cases they slide horizontally, in some cases they swing downwardly into the chamber below, and in others they swing upwardly and the seats against which they lie when closed are arranged accordingly. We also have substantially the same thing in blast furnaces with seals or gas seals or valves operating to make them air or gas tight upon precisely the same principle. It may not be amiss to call attention (without describing) to the John M. Bradner patent of 1872, No. 129,646, for "improvements in modes of closing hatchways," the Alexander Holstrom patent of 1855, for new and useful improvements in "apparatus for atmospheric pile driving," where we have a working chamber and an air lock with a manhole, one flange opening upward into the air lock and the other downward into the working chamber, but when closed this is kept closed as follows:

"When there is a greater pressure in the inside than outside, the manhole cover, b", is always closed and is kept up by said pressure."

And, further, says the patent:

"It may be remarked that all the covers are either ground or gum joints and kept tight by mere contact of surfaces."

But in other parts, as where a shaft passes through, the patentee says, "the joints being kept tight by stuffing boxes as shown in Figs. 1 and 2." See, also, C. N. Creamer patent of 1868, No. 78,265; J. N. Wilson patent, No. 131,923, of 1872; S. I. Russell patent of 1872, No. 134,169; John L. Peters patent of March 28, 1882, No. 255,663; H. Albert patent of September 18, 1883, No. 285,097; Fayette Brown patent, No. 313,849, of March 17, 1885, showing gas sealing doors or two-part valves; W. Kennedy and J. Scott patent of June 21, 1887, No. 365,077, showing gas sealing doors or a two-part valve with opening for cable as in the patent in suit, and, in fact, the entire combination of claim 3, except the packing. In the operation of a blast furnace, when the charge is introduced, it is all important that the pressure in the furnace shall not be released. Hence the use of a gas seal. In these the use of the two-part valve or two-part door, with rope opening in the center, was old when Moran came into the field. In the Kennedy patent, already referred to, the function of the gas seal and the desirability and advantage of this two-part door are described as follows:

"This construction not only acts to secure the uniform feeding of the furnace, but also as a perfect gas-seal, because the chamber, b', is tight, and the doors, g', are closed when the bell d is open and the bell d is closed when the doors, g', are open, so that there is no time, when the top is open, to permit the escape of gas, and consequently no heat is wasted at the top, and the irreg-

ular action of the blast heating stoves, due to periodical escaping of gas at the top, is avoided."

The function and mode of operation of the gas seal of the Kennedy patent and the doors of the air lock are the same so far as I can see. It seems to me that the blast furnace is an analogous art, and is properly considered in determining the questions involved here. It seems to me that Moran, having the prior art before him, and I have not referred to it in extenso, so far as claim 3 of his patent is concerned, only did what any person skilled in the art would have done, exercising that skill and the thought necessary to apply the prior art to an air lock. In my judgment there was no conception amounting to patentable invention in making the old hatchway devices strong and also air-tight by means of suitable packing carried on and with the doors or valves themselves, and applying them to an air lock. It is conceded there was patentable invention in the packing box or stuffing box, T, of the patent carried on the rope, and in its application, but as seen that is not used by defendant. There is patentable invention in other claims of the Moran patent unquestionably, but that is not the question presented here.

We return, then, to the question: Can claim 3 of the Moran patent be sustained on the ground that Moran first applied the combination, with packing, not the stuffing box, T, to an air lock? If so, it is valid and the defendant McMullen has infringed by the use of the 1901 locks. My attention has been directed to many decisions on this question, and I have given them careful attention. Possibly it is not far from correct to say that the question is whether this case is governed by Cash Register Company v. Cash Indicator Company, 156 U. S. 502–514, 15 Sup. Ct. 434, 39 L. Ed. 511, and similar cases, or by Pennsylvania Railroad v. Locomotive Truck Co., 110 U. S. 490, 4 Sup. Ct. 220, 28 L. Ed. 222, and cases following on that line. Is there any substantial change in the manner of the application of this combination or any result obtained substantially distinct in its nature from those in former uses? It is settled that the end or purpose sought to be accomplished by a device is not the subject of a patent. The new and useful means for obtaining such end or accomplishing such purpose is. Knapp v. Morss, 150 U. S. 221, 227, 14 Sup. Ct. 81, 37 L. Ed. 1059; Wollensak v. Sargent, 151 U. S. 227, 14 Sup. Ct. 291, 38 L. Ed. 137, approved Cash Reg. Co. v. Cash Indicator Co., 156 U. S. 515, 15 Sup. Ct. 434, 39 L. Ed. 511. We have a good illustration in Fond du Lac County v. May, 137 U. S. 395–397–406, 11 Sup. Ct. 98, 34 L. Ed. 714, where there was a new application of old devices and elements in a new place for a new purpose, viz., to a prison to keep the prisoners from the keeper. And in Wollensak v. Sargent, supra, at page 227 of 151 U. S., at page 293 of 14 Sup. Ct. (38 L. Ed. 137), it is said:

"The novelty must be a novelty in the means or mechanical device, and not in the use to which the combination is put."

Here the primary end or purpose to be accomplished, so far as this patent is concerned, was to carry the load continuously from the working chamber of the caisson through the air lock to the open air by means of the same rope or cable, at the same time maintaining the com-

pressed air pressure in such working chamber. To do this it was necessary to maintain the compressed air pressure in the air lock proper notwithstanding the movement of the load and of the rope or cable carrying it through the hole in the valves in the upper part of the air lock, until such time as the operator saw fit, in the proper operation of the air lock and caisson, to equalize the air pressure in the lock with that outside. Hence the immediate object or purpose of the combination of claim 3 of the Moran patent was to prevent the escape from the chamber of the air lock of the compressed air through the opening in the valves provided for the passage of the rope or cable. Have we any new or useful means for accomplishing this purpose or object? To accomplish this purpose Moran brought to his aid the old two-part valve or double doors opening in the air lock (but there was nothing new in this mode of opening), and closing in the old way against a seat on the inner side of the air lock (necessarily there) having the old central opening for the passage of the rope or cable, the exact equivalent of the rod carrying the load in the blast furnace construction, and the exact construction found in hatchways, and the old stuffing box arrangement (not the stuffing box, T, carried on the rope) described as follows:

"About the hole N I may arrange a stuffing box in two halves as shown in Figs. 4, 5, and 6, or flexible packing arranged in some other way so as to make a close joint with the cable."

Any old stuffing box, or any flexible packing arranged in any old way. I fail to discover anything new in this arrangement. No new function is performed by either element or by all the elements combined. The old hatchway is made air-tight by close construction and seating, and by packing about the apertures therein in the old way of making anything air-tight. Hatchways had not been made perfectly air-tight for the reason that no one desired an air-tight hatchway, except as necessary to keep the cellar or room from freezing in winter time, and every country grown man knows that in the winter time the hatchway was secured against the inrush of cold air by packing of various descriptions, such as cotton, wool, and old clothes. Some principles in patent law are quite well settled and should not be departed from. "A new arrangement or grouping of parts or elements which is the mere result of mechanical judgment and the natural outgrowth of mechanical skill, is not invention." Also, "the combination of old devices into a new article without producing any new mode of operation, is not invention." Florsheim v. Schilling, 137 U. S. 64, 76, 77, 11 Sup. Ct. 20, 25, 34 L. Ed. 574. "The application of an old process or machine to a similar or analogous subject, with no change in the manner of applying it, and no result substantially distinct in its nature, will not sustain a patent, even if the new form of result has not before been contemplated." Pennsylvania R. R. v. Locomotive Truck Co., 110 U. S. 490, 4 Sup. Ct. 220, 28 L. Ed. 222, approved Howe Machine Co. v. National Needle Co., 134 U. S. 397, 10 Sup. Ct. 570, 33 L. Ed. 963. See, also, cases there cited. In Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485–493, 20 Sup. Ct. 708, 44 L. Ed. 856, it was held that under the state of the art "it required no inven-

tion to adapt to a windmill the combination of an internal toothed spur wheel with an external toothed pinion, for the purpose of converting a revolving into a reciprocating motion." At page 493 of 177 U. S., at page 712 of 20 Sup. Ct. (44 L. Ed. 856) the court said:

"Martin, therefore, discovered no new function; and he created no new situation, except in the limited sense that he first applied an internal gearing to the old Mast-Foos mill, which was practically identical with the Martin patent, except in the use of an internal gearing. He invented no new device; he used it for no new purpose; he applied it to no new machine. All he did was to apply it to a new purpose in a machine where it had not before been used for that purpose."

The court also reiterates what was held in Potts v. Creager, 155 U. S. 597, 608, 15 Sup. Ct. 194, 199, 39 L. Ed. 275:

"If the new use be so nearly analogous to the former one that the applicability of the device to its new use would occur to a person of ordinary mechanical skill, it is only a case of double use."

The court then says:

"The line between invention and mechanical skill is often an exceedingly difficult one to draw; but, in view of the state of the art as heretofore shown, we cannot say that the application of this old device to a use which was only new in the particular machine to which it was applied was anything more than would have been suggested to an intelligent mechanic who had before him the patents to which we have called attention. While it is entirely true that the fact that this change had not occurred to any mechanic familiar with windmills is evidence of something more than mechanical skill in the person who did discover it, it is probable that no one of these was fully aware of the state of the art and the prior devices; but, as before stated, in determining the question of invention, we must presume the patentee was fully informed of everything which preceded him, whether such were the actual fact or not."

So here it may be that it had not occurred to persons familiar with the construction of air locks to use this combination, and so Moran did not find it in actual use with air locks, but had he looked into hatchways and blast furnaces and pile drivers he would have found the same combination used in different ways. In the pile driver patent, cited above, packing was not used as ground joints and surfaces made it unnecessary, and that fact is mentioned. In Aron v. Manhattan Railway Company, 132 U. S. 84, 10 Sup. Ct. 24, 33 L. Ed. 272, the court, affirming the court below, quoted the language of Judge Wallace and affirmed on his opinion. Judge Wallace had said:

"A brief reference to the prior state of the art will indicate that the combinations referred to in the several claims are merely an application to a new situation of old devices which had been previously applied to analogous uses. * * * This partial exhibit of the prior state of the art demonstrates that what the patentee did was to adapt well-known devices to the special purpose to which he contemplated their application. * * * The patentee is entitled to the merit of being the first to conceive of the convenience and utility of a gate opening and closing mechanism which could be operated efficiently by an attendant in the new situation. His right to a patent, however, must rest upon the novelty of the means he contrives to carry his idea into practical application. It rarely happens that old instrumentalities are so perfectly adapted for a use for which they were not originally intended as not to require any alteration or modification. If these changes involve only the exercise of ordinary mechanical skill, they do not sanction the patent."

I think that here Moran only exercised ordinary mechanical skill in adapting the elements of claim 3 to air locks, adding packing to close the hole about the rope or cable.

In Blake v. San Francisco, 113 U. S. 679, 5 Sup. Ct. 692, 28 L. Ed. 1070, the headnotes are:

"The second claim in the reissued patent of September 18, 1877, to Charles E. Blake, assignee of the administratrix of Thomas H. Bailey, deceased, for an improvement in relief valves for water cylinders, is for a combination of an automatic valve with a pinhole and pin to effect the desired object; and, as automatic valves had been previously used for that purpose in other combinations, it is not infringed by a combination of such a valve with a screw, sleeve, or cap to effect the same objects.

"The adaptation of an automatic valve, a device known and in use before the plaintiff's patent, to a steam fire engine, is not such invention as will sustain a patent.

"Where the public has acquired the right to use a machine or device for a particular purpose, it has the right to use it for all like purposes to which it can be applied, unless a new and different result is obtained by a new application of it."

I cannot, in view of the prior art, find invention in the combination decsribed in claim 3 of the Moran patent, and hence it is invalid and there can be no infringement thereof.

In Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586, the court had under consideration a machine for attaching stays to the corner of boxes, and referred to the fact that no one had discovered that certain prior machines could be made available for the purpose of attaching strips to the corners of boxes, a new use; and then said:

"This very fact is evidence that the man who discovered the possibility of their adaptation to this new use was gifted with the prescience of an inventor. * * * We agree with the courts below that it did involve invention to see that a machine of the Dennis and York type was adaptable to the work of the Beach device; and, second, to make such changes as were necessary to adapt that device to its new function."

But here we have no new use, simply a use in a new place, quite a different thing, and we have no new function performed by the old combination. The function performed is precisely the same. In Carstaedt v. U. S. Corset Co., 113 Blatchf. 119, Fed. Cas. No. 2,468, there was a change in the position of the needle bar, and its relation to the take up and to the edge of the cloth so that, said the court, "a new combination of devices has been, in fact, created, and the new combination has accomplished a new and useful result." Nothing of that kind has been done here. Moran hoisted the load to the open air without changing conveyances in the chamber of the lock, but not by the use of any of the elements in the combination. That was and is done by independent means. He also maintained the air pressure in the caisson in the old way, by closing the lower valves or doors after the load had passed into the chamber of the air lock. He maintained an equal pressure in caisson and air lock, while the load was passing from caisson to air lock and the lower doors were being closed, by means of the packing or stuffing box about the cable at the rope or cable opening in the upper two-part valve, and by this alone, and while he is entitled to the merit of being the first to conceive that, if made sufficiently tight about the opening for the rope, it would be convenient and useful to construct air

locks that way, still his right to a patent depended on the novelty of the means contrived to carry the idea into practical operation: He contrived no new or novel means; he made no substantial change in old devices; he used an old well-known packing or packing box (aside from stuffing box, T, conceded to be new and novel, but not used by defendants); and he made it serve its old purpose and accomplish its old result. This was not invention. Aron v. Manhattan Railway Company, 132 U. S. 84, 10 Sup. Ct. 24, 33 L. Ed. 272.

We come then to a consideration of the validity of claims 1, 3, 4, 6, and 8 of the Barr patent. These read as follows:

"(1) An air-lock for caissons, comprising upper and lower gates, pistons connected to said gates, and operating in cylinders and connections between said cylinders and the air confining cylinder of the caisson whereby said pistons and gates are operated by the air pressure in the caisson, substantially as set forth."

"(3) An air-lock, comprising a cylinder, a gate or gates formed in two parts or sections, and fluid pressure-controlled devices for simultaneously moving said parts or sections horizontally in opposite directions out of the passageway of said cylinder, substantially as set forth.

"(4) An air-lock, comprising a cylinder, and a gate formed in two parts or sections, and fluid pressure-controlled devices connected to each of said parts or sections for simultaneously moving the latter horizontally in opposite directions, substantially as set forth."

"(6) An air-lock, comprising a cylinder, a bed-plate or casting having a hole or opening, a gate formed in two parts or sections, cylinders supported by said plate or casting and pistons movable in said cylinders and having their rods connected to said parts or sections, substantially as set forth."

"(8) An air-lock, comprising a gate formed in two parts or sections, pistons having their rods connected to said parts or sections, cylinders for said pistons having two ports or passage-ways, pipes opening at their ends into said ports or passage-ways, and a valve connected to said pipes, substantially as set forth."

Aside from the mode of moving and the means for moving the gates, the two-part valves, or double doors of the Moran patent, this is substantially a duplication of that patent. It differs, also, from some features of the Moran patent, in that the valves, or doors, or gates, move horizontally, and are pressed, or may be, by the same mechanism, constantly against or towards each other, so that the packing about the rope or cable carrying the load is or may be constantly pressed against it, thus insuring against an escape of compressed air. But horizontally-moving gates are shown in figure 9 of the Moran patent. Hence this is not new even in air locks, and I find no mention of this constant pressure against the rope or cable in the patent. In short, Barr by suitable devices moves the gates, valves, or opens and closes them, by using the compressed air contained in the working chamber of the caisson or in the air lock, as the case may be, and which is constantly being pumped in or supplied to both.

Claim 3 of this Barr patent is clearly covered and anticipated by the Moran patent, which has the air lock with a cylinder, the gates (or doors or two part valves), moving horizontally in opposite directions, (Fig. 9 of Moran patent), out of the passageway of said cylinder, and the Moran patent expressly says:

"Fig. 9 shows a modification of the upper valve wherein the half valves, K, K', are borne on rollers on tracks below the valve seat, so arranged that

the valve will fall upon the tracks when the air pressure is removed from the bucket space, M, when the half valves K. K', may be moved away by hand or appropriate instrument so as to leave a free passage through the opening in the air lock. When the cable is again in position the half valves are pushed together, [by hand or "appropriate instrument," of course] the air pressure turned on to the space, M [the chamber of the air lock], and the valve, K, K', raised against the valve seat by the air pressure, making a close joint."

In short, Barr in making up claim 3 of his patent has taken the air lock and cylinder and valves of the Moran patent, and added the "appropriate instrument" for moving the gates or valves described by Moran, but not claimed, limiting it to "a fluid pressure-controlled device," very old in analogous arts, for doing the same thing in the same way. No new function is performed, no new result obtained, and the elements operate in the same way to produce the same result. There is no patentable invention here in view of the prior art, even if we confine that art to the Moran patent. Moran would open and close the valves or gates by hand, or by steam, water, or compressed air, using, of course, some device controlled by fluid pressure. In view of the prior art as it existed in 1894, there was no novelty or patentable invention in moving gates of this description by water, steam, or compressed air. See O'Reilly v. Morse, 15 How. 62, 14 L. Ed. 601.

Claim 4 is in all material respects the same as claim 3, and falls with it. There is nothing new or novel that even winks at patentable invention in claims 6 and 8 of the Barr patent. The bed plate or castings are of the most ordinary construction, and they are placed where any person possessing common sense, having in view the purpose to be served, would have placed them and where they must be placed to do the work or serve the purpose desired. They support the valves or gates and the pipes and pistons and rods necessary for controlling and applying the compressed air thereto. There is nothing new or novel in the gates, or pistons, or rods, or cylinders, or ports, or pipes, or in their mode of operation, or in the result obtained or in their mode of application. These, old, are applied to an air lock, old, to move the gates, old, in the old way. It may be that they are here used for the first time to control the gates or valves of an air lock. But within the cases cited this is not invention. To do it did not even require "thought" in the patentable sense of mental conception. These things are not attached or applied in any new or novel way, or to accomplish any new result, and in the light of the prior art and expert evidence in the case, which has been carefully considered, there is no patentable invention disclosed. See Brown patent, No. 313,849, of March 17, 1885; Kennedy & Scott patent of June 21, 1887, No. 365,077; Joyner and Petesch patent of March 8, 1887, No. 358,977; Walsh patent of April 16, 1889, No. 401,394; Hawksworth patent for door opener, of March 25, 1890, No. 424,060; Paterson & Cumming patent of July 15, 1890, No. 432,070, for opening and closing water-tight bulk-head doors made of two parts and constructed to approach each other. This patent says:

"The mechanical devices by which the two parts of the door may be made to approach or recede from each other simultaneously may consist of screw gear, chain, or rope gear, or tooth gear, or any combination thereof. The gear

may be worked by manual, steam, or hydraulic power, or any combination thereof."

See, also Clark patent, May 30, 1893, No. 498,507, apparatus for operating furnace doors; Hartman patent of July 14, 1885, No. 321,-966, and especially Stephen patent of August 19, 1890, No. 434,486, device for operating elevator well doors; this operating fluid and cylinders, and valves, and pipes, etc. Last, but not least, we have the patent to Judson of June 7, 1892, No. 476,386, "device for closing elevator gates," operated by compressed air with all the necessary machinery, such as cylinders, pipes, pistons, valves, etc., as in the Barr patent.

As to claim 1 of the Barr patent, while it requires that both the upper and lower gates shall be operated by air pressure which is not done in the 1901 locks, I can find no patentable invention disclosed in view of the prior art. It is simply putting an old device or machine into a new place, applied in the same way, substantially, to do its old work in the same way, and producing the same result.

There will be a decree dismissing the bill of complaint, with costs.